# M. F. SCOTT AND NETTIE L. SCOTT *v.* KONA DEVELOPMENT COMPANY, LIMITED, A CORPORATION.

## EXCEPTIONS FROM CIRCUIT COURT, THIRD CIRCUIT.

ARGUED NOVEMBER 25, 1912.                    DECIDED JANUARY 23, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

PARTIES—*non-joinder of defendants—waiver.*

In the absence of statute the rule is that the non-joinder of a defendant in an action *ex contractu* can be taken advantage of, when the defect is not apparent on the face of the declaration, only by plea in abatement and that when such a plea is not presented an answer of general denial and trial on the merits constitute a waiver of the defect. Section 1736, R. L., does not alter the rule.

ASSUMPSIT, ACTION OF—*essentials—proof of breach.*

A breach of the promise declared on is of the essence of the action of assumpsit.

ID.—*breach of promise—failure of proof.*

When in an action of assumpsit the allegation is that the defendant promised to pay a stated sum of money and neglects and refuses to pay the same or any part thereof and the undisputed evidence is that the defendant's promise was to execute certain promissory notes and to deposit them with a trustee as security for the payment of plaintiff's indebtedness to defendant in an unascertained amount and that all the parties agreed that the notes should not be delivered by the trustee to the payees until after the determination, by agreement, by arbitration or by judicial adjudication, of the amount of the plaintiff's indebtedness and that then such only of the notes should be delivered as were not consumed in the payment of that indebtedness, and the undisputed evidence further is that the defendant has performed all of his part of the contract in so far as the same is possible of performance until the due determination of the amount of the plaintiff's indebtedness and that the amount has not been ascertained in any of the methods prescribed, there is an utter failure of proof of the breach, if not of the promise also, and a judgment of nonsuit may properly be entered.

Scott v. Kona Development Co., 21 Haw. 408.

TRIAL—*nonsuit—time for motion.*

A motion for a nonsuit may be granted even though made at the close of all of the evidence in the case, provided only that the defendant's evidence does not cure the defect complained of in the plaintiff's proof.

COSTS—*attorneys' fees in assumpsit.*

Defendant's attorneys' fees under section 1892, R. L., are not taxable in an action of assumpsit in which judgment of nonsuit is entered for failure of proof.

ID.—*mileage—witnesses not subpoenaed.*

Traveling expenses of witnesses not subpoenaed are not taxable as costs.

ID.—*witnesses' fees—expert witnesses.*

Sums paid for compensation of expert witnesses beyond ordinary fees authorized by statute for witnesses generally are not taxable as costs under section 1889, R. L., relating to "actual disbursements * * * deemed reasonable by the taxing officer."

## OPINION OF THE COURT BY PERRY, J.

This is an action at law, *ex. contractu,* for the recovery from the sole defendant of the sum of $57,026.61. The trial court found that the promise declared on was made by James B. Castle and F. B. McStocker jointly with the defendant and rendered judgment for defendant on the sole ground of "non-joinder of proper parties defendant" and plaintiffs excepted.

The fact, if fact it was, that there were three joint promisors did not appear on the face of the declaration and therefore the defect, if any, could not have been taken advantage of by demurrer; but the objection could have been raised by plea in abatement. No such plea was presented. The defendant filed an answer of general denial and proceeded to trial on the merits, the actual trial occupying a period of ninety-six days, commencing on September 20, 1910, and continuing, with intermissions, until August 16, 1911. Not until the last day of the trial was the contention advanced that there was a non-joinder of parties defendant. The injustice of permitting the defendant to keep the point in reserve and to raise it for the first time at

the end of the trial is obvious. By its silence the defendant must be held to have waived the objection. The rule is well settled that in the absence of statute the non-joinder of a defendant in an action *ex contractu* can be taken advantage of, when the defect is not apparent on the face of the declaration, only by plea in abatement and that failing such a plea an answer of general denial and trial on the merits constitute a waiver of the defect. "The objection, however," (that plaintiff sued two or more but not all of joint and several obligors) "is not fatal to the merits, but is pleadable in abatement only; and if not so pleaded, it is waived by pleading to the merits. The reason is, that the obligation is still the deed of all the obligors who are sued, though not solely their deed; and therefore there is no variance in point of law, between the deed declared on and that proved. It is still the joint deed of the parties sued, although others have joined in it." *Minor* v. *Mechanics' Bank*, 1 Pet. 46, 73. "Generally speaking, all joint obligors and other persons bound by covenants, contract, or quasi contract, ought to be made parties to the suit, and the plaintiff may be compelled to join them all, by a plea in abatement for the non-joinder. But such an objection can only be taken advantage of by a plea in abatement; for if one party only is sued, *it is not matter* in bar of the suit, or in arrest of judgment, upon the finding of the jury, *or of variance* in evidence upon the trial." *Gilman* v. *Rives,* 10 Pet. 298, 299. "In actions of contract, non-joinder of parties jointly liable as defendants can only be taken advantage of by plea in abatement. In this case the right to plead in abatement was lost, by filing an affidavit of merits with an answer in bar." *Leonard* v. *Speidel,* 104 Mass. 356, 359. "Nor does it matter that the declaration is upon an individual contract. *A joint contract is not at variance with the count.* It is still the undertaking *of the defendant in solido;* though being with another, he has the right to have that other brought in, but only in the very first stage of the cause, by plea in abatement." *Collins* v.

*Smith,* 78 Pa. St. 423, 425, 426. "The objection should have been taken advantage of, if at all, by a plea in abatement. The general rule that the non-joinder of a defendant can be taken advantage of only by plea in abatement, is elementary." *Hyde* v. *Lawrence,* 49 Vt. 361, 363. "The rule in regard to non-joinder is well settled and has not been questioned since the case of *Rice* v. *Shute,* 5 Burr. 2611. \* \* \* If the defendant would take advantage of the non-joinder he must do it at the proper time by a plea in abatement." *Merson* v. *Hobensack,* 22 N. J. L. 372, 379. "It is argued, further, on behalf of the plaintiff in error, that the judgment against him alone, on the joint note of Coe and himself, is erroneous and must be set aside. Although the institution of a suit against Hennessy alone, upon the joint note of Hennessy and Coe, was undoubtedly irregular, yet, we are of the opinion that it is such an irregularity as ought to have been taken advantage of, by plea in abatement, or, perhaps, demurrer under our mode of pleading; and, if not so taken advantage of, must be held to be waived. This is an objection which goes rather to the mode of proceeding, than to the merits of the action." *Hennessy* v. *Bolles,* 2 Haw. 184, 187. See also *Dayton* v. *Hopkins,* 10 Haw. 540; *Converse* v. *Symmes,* 10 Mass. 377; *Prunty* v. *Mitchell,* 76 Va. 169; *White* v. *Cushing,* 30 Me. 267; *Lieberman* v. *Brothers,* 26 Atl. 828; *Bignold* v. *Carr,* 24 Wash. 413; *Schroder* v. *Pinch,* 126 Mich. 185; *Armour* v. *Ward,* 61 Atl. 765; *Allen* v. *Sewall,* 2 Wend. 327; *Nickerson* v. *Spindell,* 164 Mass. 25; *Porter* v. *Leache,* 56 Mich. 40; *Wilson* v. *McCormick,* 86 Va. 995.

The provision of section 1736 R. L., that under the general issue "the defendant may give in evidence, as a defense to any civil action, any matter of law or fact whatever," does not render the rule above stated inapplicable or ineffective in this jurisdiction. The matter receivable in evidence under this provision must be *a defense* to the action. That others not named as defendants promised jointly with the defendant does not

operate in bar and is not a defense for it remains true in spite of their co-promise that the defendant promised as alleged; and for the same reason there is no variance between the pleading and the proof in such a case. The allegation that the defendant promised is proven, even though it further appear that others joined with him in the promise. Cases supra.

*Heeia Plantation Co.* v. *McKeague,* 5 Haw. 101, is not an authority to the contrary. In that case the plaintiff, a foreign corporation, sued without alleging its compliance with the law which denied to a foreign corporation the benefit of the laws of the Kingdom unless it should file in the office of the minister of the interior a designation of a person upon whom service of process could be made. The question of the defectiveness of the declaration in this respect was raised by demurrer, the demurrer was sustained and the plaintiff was given leave to amend. The court said, inter alia: "In those countries where the common law exists, the rules of special pleading would require that the question, as to the corporate character of the plaintiff, be made by a plea in abatement, since by pleading to the merits, the defendant admits the capacity of the plaintiff to sue. But the plea of the general issue by our statute allows the defendant 'to give in evidence, as a defense to any civil action, any matter of law or fact whatever.' Civil Code, Secs. 1106 and 1107. And under this plea, the plaintiff, on its amended petition, should be required to show its corporate existence and its compliance with the law." To say nothing of other possible methods of distinguishing the case, it may be noted that the question there was whether the plaintiff was one of the class of corporations to which our statute expressly denied the benefit of our laws and more particularly of the right to sue. It may well have been held that the statutory prohibition of the maintenance of an action continued throughout the trial and could be availed of under the general issue, but that ruling is not an authority in support of the contention that in an action such as that at bar, in which the plaintiffs are law-

fully suing a defendant which is liable to them, the non-joinder of other persons also liable is not waived by failure to plead in abatement and may be presented as a defense under the general issue.

Upon another ground, however, the plaintiffs cannot prevail in this proceeding. The action is assumpsit. In the declaration as last amended, after reciting that on July 5, 1905, the plaintiffs jointly owned in North Kona, County of Hawaii, a large area of growing sugar cane, had certain leasehold interests in the lands whereon the cane was growing and were jointly interested in the cane-planting enterprise, that on the day named they entered into an agreement with one F. B. McStocker relating to the making of advances, the transportation of cane and the manufacture of sugar by McStocker and the planting, cultivation and harvesting of cane by the plaintiffs, that by assignment the interest of McStocker in and duties under the agreement passed to and devolved upon the Kona Development Company, the present defendant, and that certain modifications stated were subsequently made by the parties in the agreement of July 5, 1905, and after a recital, further, of advances made by McStocker or his successor to plaintiffs, of the furnishing by the plaintiffs to the defendant of certain cane seed, wood, use of buildings and land, growing cane on land not included in the agreements and other benefits, and of other acts of the parties under their agreements, it is alleged that as a result of negotiations commencing a short time prior to April 30, 1908, and ending on June 8, 1908, the parties entered into an agreement, hereinafter referred to as the contract of April 30, 1908, whereby "plaintiffs bargained to sell and defendant bargained to purchase all of the interest of plaintiffs in said standing and growing cane and leases and leaseholds and other property" and in three certain promissory notes of $5000 each owned by plaintiffs "for the sum of $79,565.28"; that in pursuance of the latest agreement plaintiffs transferred to the defendant all of their interest in the cane, leases, promis-

sory notes and other property mentioned; that "in consideration of said sale and transfer as aforesaid defendant promised to pay plaintiffs jointly the sum of $79,565.28, said payment to be as of the date of April 30, 1908, provided that out of said sum of $79,565.28 plaintiffs jointly and severally promised to pay to defendant all sums that might be found to be due from M. F. Scott to said defendant on account of money advanced or material furnished to said M. F. Scott under any or all agreements between said parties pertaining or relating to said cane planting enterprise, the amount of rents that might be found to be due from said M. F. Scott to J. B. Castle on account of rents known as Laloa rents, to said date of April 30, 1908, and the further sum of $187" being certain interest named; that in the contract of April 30, 1908, "all other agreements by and between the respective parties or by and between defendant and M. F. Scott had been merged"; that the total due from Scott to defendant and payable under the contract of April 30, 1908, is $19,335.11; and that "of the sum of $79,565.28 promised by defendant to be paid to plaintiffs as alleged * * * defendant on or about the 22nd day of July, 1908, paid to plaintiffs the sum of $3,203.56 together with interest on said sum of $3,203.56 from the date of April 30, 1908, * * * leaving a net balance due and payable to plaintiffs by defendant as of said date of April 30, 1908, after deducting the said sum of $19,335.11, of the sum of $57,026.61, which sum, though often requested by plaintiffs to pay, defendant has neglected and refused and still neglects and refuses to pay or any part thereof." The prayer is for judgment for the sum of $57,026.61 against the said defendant with interest thereon from the 30th day of April, 1908, * * * together with attorneys' commissions and costs."

The fundamental allegations upon which the action is thus made to rest are the promise by the defendant to pay to plaintiffs $57,026.61 and the breach of that promise. Upon these points the facts as shown by the undisputed evidence, introduced

by the plaintiffs, were as follows: The agreement of April 30, 1908, was arrived at by correspondence and its terms are as expressed in that correspondence and in a certain instrument in writing dated June 8, 1908; the total purchase price of the cane and other property was agreed "to be divided into three parts, the first part to be 20% of the whole, and each of the other two parts to be 40% of the whole. The first part, 20% to be payable in one year, one part 40%, payable in two years, and the other part 40% payable in 3 years. Promissory notes to be executed therefor, no one note to exceed $5000 and each and every note to be executed jointly and severally by the Kona Development Co., the Hawaiian Development Co. and the West Hawaii R. R. Co., the payee in one half the notes to be Nettie L. Scott, and in the other half M. F. Scott, and each and every note to be signed by Jas. B. Castle and F. B. Mc-Stocker, either as guarantors or indorsers, at the election of the respective payees." "All of said notes" were "then to be deposited with some trustee whom the payees may select and Jas. B. Castle approve, as security for the payment of any and all sums that may be found due from M. F. Scott to Jas. B. Castle or the Kona Development Co. on account of cane-planting contract, said notes to be applied to the liquidation of said indebtedness in the order of their earlier maturity, and should said indebtedness exceed the total of all notes then the whole indebtedness to be discharged by the whole of said notes." A schedule of the notes to be executed and deposited with the trustee, showing the number, name of payee, term and amount of each note, was attached to and made a part of the instrument of June 8, 1908. That instrument, executed by the plaintiffs, the defendant and others, recites that the plaintiffs have agreed that "William R. Castle of Honolulu shall be the trustee to hold and dispose of the promissory notes" mentioned in the schedule and provides: that the trustee shall release to the payees notes to the amount of any excess of the total of the notes over and above such total sum as may be claimed by the

makers to be due to them by M. F. Scott and shall return and surrender· to the makers or release to the payees, as the case might be, notes to the amount of any sum as may be agreed upon by the payees to be due by one to the other; that "if within three months after the execution of this agreement, the said M. F. Scott and the said parties of the second part have not mutually agreed upon a full settlement of the sums so in dispute, being sums claimed to be due from said M. F. Scott to said parties of the second part, then the said parties may agree to arbitrate the sums so in dispute; but, if the parties do not agree upon the terms of a submission to arbitration within·ten days after the expiration of said three months, then said M. F. Scott may bring such suit or suits, action or actions, as he may deem advisable to settle and determine the amounts so in dispute" and "upon the final adjudication of the arbitrators or court in any such submission, suit or action, then said trustee shall at once dispose of said notes remaining in his hands in the same manner" as earlier in the instrument provided "and thereby terminate this trust"; that "the trustee is not empowered to declare any of said notes in default for nonpayment of interest, nor to collect any interest thereon"; that "in case of any delivery of notes by the trustee to either the party of the first part or to the parties of the second part, he shall in each case deliver, as nearly as may be, one-half of the amounts so delivered in notes made payable to said M. F. Scott, and one-half thereof in notes made payable to the said Nettie L. Scott"; that "in case of the delivery of any notes to the parties of the first part, the trustee is hereby authorized and directed to cancel and revoke by appropriate endorsement thereon the words 'subject to the terms and conditions of that certain Trust Agreement by and between the makers, payee and endorsers hereof and W. R. Castle, dated June 8th, 1908' ", which words by agreement were to be a part of each note. By still another written instrument, undated, it was agreed that "the agreement now in force by and between the

parties hereto shall go into effect as of April 30, 1908, on which date the account of the Kona Development Company, Ltd., F. B. McStocker and James B. Castle against M. F. Scott shall be closed and interest thereon ceased to run, and on which date the notes agreed to be given to said M. F. Scott shall be dated and interest begin to run thereon." The notes were duly executed and deposited with the trustee in accordance with the requirements of the contract and subsequently the trustee released to the payees notes in the amount of $3,203.56, that being the excess of the total of the notes over and above the total of the makers' claims against Scott. The parties were unable to agree upon the amount of Scott's indebtedness and attempts at arbitration failed; and after the expiration of the period of three months and ten days named in the agreement of June 8, 1908, this action was commenced. The Kona Development Company, F. B. McStocker and others brought a bill in equity to restrain the present plaintiff from proceeding in this action, but the temporary injunction issued was later dissolved and its dissolution affirmed on appeal (19 Haw. 585) and no further steps have been taken in the suit in equity. Plaintiff M. F. Scott has instituted no other judicial proceeding to determine the amount of his indebtedness and it remains today undetermined judicially or otherwise.

No citation of authority is required in support of the statement that a breach of the promise declared on is of the essence of the action of assumpsit. Plaintiffs, recognizing this, have alleged a promise to pay money and a breach of that promise. But there has been an utter failure of proof of the breach, if not of the promise also. The only proof is of a promise to execute certain notes and to deposit them with a trustee as security for the payment of Scott's indebtedness and of an agreement by all the parties that the notes shall not be delivered by the trustee to the payees until after the determination, in one of the methods named, of the amount of Scott's indebtedness and that then such only of the notes shall be delivered as are not

consumed in the payment of that indebtedness. The defend-
ant has performed all of its part of the contract in so far as
the same is possible of performance until the due determina-
tion of Scott's indebtedness and has committed no breach of
any promise made by it. Under these circumstances the action
cannot be successfully maintained. It is not only a matter of
variance between the pleadings and the evidence but of a failure
of proof of an essential allegation. Nor is it a matter of pre-
maturity of action, which perhaps would be capable of waiver,
for even after the expiration of the term of the notes the latter
cannot, by the express stipulations of the contract of the par-
ties, be delivered, and their payment cannot be required, until
after the due determination of the amount of Scott's indebt-
edness.

The plaintiffs contend that the law announced in the opinion
upon the appeal in the equity suit (19 Haw. 585) should be
followed and that if followed it will require a decision in favor
of the plaintiffs upon the point just discussed. The contention
cannot be sustained. The extracts relied upon by the plaintiffs
read: "We see no inadequacy of the legal remedy in conse-
quence of its requiring a money judgment while notes are de-
posited with a trustee to satisfy such judgment if any is made,
for it is to be presumed that they would be applied in pay-
ment of the judgment precluding an issue of execution"; and,
"neither the declaration in the action nor the bill in equity pre-
sents any question which requires to be passed upon by a court
of equity or which is not cognizable in a court of law." Or-
dinarily questions concerning the relative jurisdictions of law
and equity to determine a controversy arise when a complain-
ant seeks relief in equity and the respondent objects on the
ground that the complainant has an adequate remedy at law
and therefore none in equity. In the case reported in 19 Haw.
585, the position was the reverse. The present plaintiffs had
first sought a remedy at law and the present defendant urged
various reasons why it believed that *its* rights would not be

sufficiently protected at law; and the attention of the court was directed simply to an ascertainment of whether the complainants in equity would be sufficiently protected at law. The statements quoted must be read in the light of that situation. The court in that proceeding for the dissolution or the continuance of the temporary injunction was not asked to consider and did not consider, as a study of the opinion will disclose, whether the present plaintiffs would be able to prove their allegations in the action at law. The court, apparently assuming that the plaintiffs could succeed in their proof, held that the presumption was that the notes deposited with the trustee would be applied in payment of the judgment precluding an issue of execution, that no violation of the trust in that respect was shown to be apprehended, and that therefore the present defendant was not in need of the protection of an injunction. But even if the court had considered the question and had been of the opinion that the plaintiffs could not prove the essential allegations of their action of assumpsit, the maintenance of the action would not have been restrained. The defense of failure of proof would have been held to be available at law. Equity will not enjoin an action at law merely because the plaintiffs will fail in their proof. "Relief will be denied to a party who seeks the aid of a court of equity against pending or threatened proceedings at law, where it appears that the matters relied upon are such as if established would constitute a defense in a law action, and where the complainant's right will be fully protected by a successful defense; that is, where no wrong is threatened beyond the assertion of the legal demand, open as it is to such defense." 16 Cyc. 57. "The plaintiff needs no injunction and is entitled to none. The statements in the bill, which are admitted by the demurrer, show a perfect legal defense to the action of which he prays the court to restrain the prosecution. * * * A court of equity does not issue an injunction to stay proceedings at law where the rights of a party can be fully sustained in a court of

law." *Fuller* v. *Cadwell,* 6 Allen 503, 505.   To the same
effect are:   *Ins. Co.* v. *Bailey,* 13 Wall. 616; *McBride* v. *Little,* 115 Mass. 308; *Slater* v. *Schwegler,* 54 Atl. 937; *York* v. *Murphy,* 91 Me. 320; and *Bulkeley* v. *Welch,* 31 Conn. 339.

Another contention is that the account involved in the case
is of such a nature that it cannot be conveniently and properly·
adjusted and settled in an action at law and that for this rea-
son, if for no other, the plaintiffs' remedy is in equity.   Upon
the motion to dissolve the injunction in the equity suit already
referred to (19 Haw. 585) this court considered to some ex-
tent the question of the intricacy of the accounts, but upon
the mere allegations of the bill found difficulty in "saying
whether the action involves the taking of accounts too intricate
for a jury to pass upon" and therefore preferred "to regard the
injunction as properly dissolved on the ground that the bill does
not contain averments requisite to sustain a bill for an account-
ing", remarking that the bill did "not even pray for an ac-
counting" and did not "allege that a balance would be found
owing by the defendants to the plaintiffs and that the plaintiffs
are ready and willing to pay whatever balance, if any, should
be found upon the accounting to be owing by them to defend-
ants."   Upon this subject the circuit court in its decision, "in
passing,   *   *   *   observed, with reference to the supreme
court's remark, 19 Haw. 594,   *   *   *   that, with all the
evidence presented after a trial of ninety-six days, it would
certainly be difficult now to say otherwise than that 'the most
that a jury could award would be a lump sum, derived from
general impressions remaining as the consequence of a trial
covering a long period of time and involving a great multitude
of items of all kinds,' " quoting *Fenno* v. *Primrose,* 116 Fed.
49.   The developments at the trial, with its testimony covering
5,639 pages of transcript, its mass of exhibits and the numer-
ous items in dispute between the parties, would seem to at
least lend considerable color to the remark of the circuit court.

However that may be, a decision on the question is not essential to a determination of the present exceptions.

In the formal judgment entered in the court below it is recited that the court rendered a decision "finding that there has been failure to join James B. Castle and F. B. McStocker as defendants with the Kona Development Company, Limited, and ordering that judgment should be entered in favor of the defendant on the ground of non-joinder of proper parties defendant" and it is then "ordered, adjudged and decreed that the defendant, the Kona Development Co., Ltd.; have judgment against the plaintiffs, M. F. Scott and Nettie L. Scott, on said ground, and for its costs." Whether the judgment, if it had failed to show on its face that it was based on the sole ground of non-joinder, should be affirmed because of the failure of proof of the breach alleged, need not be considered. In view of our conclusion that the ground of non-joinder must be deemed to have been waived and is not now available to the defendant, we think that the judgment in its present form should be set aside and that defendant's motion for a nonsuit should be granted and a judgment of nonsuit entered. A motion for a nonsuit may be granted even though made, as this was, at the close of the case, provided only that the defendant's evidence does not cure the defect complained of in the plaintiffs' proof. *Brown* v. *Ins. Co.,* 59 N. H. 298; *Cooper* v. *Waldron,* 50 Me. 80; *White* v. *Bradley,* 66 Me. 254; *Fort* v. *Collins,* 21 Wend. 109 ;*Jansen* v. *Acker,* 23 Wend. 480.

Plaintiffs excepted to the taxation against them as costs of attorneys' commissions in the sum of $1,799.56 and of certain items of disbursements for fees of experts and traveling expenses of witnesses. In strictness, perhaps, these questions are not properly before us for determination since the judgment of nonsuit has not yet been entered. We shall, however, briefly state our views upon them in order to render unnecessary further litigation upon these points.

In *Lowrey* v. *Baldwin*, 19 Haw. 258, attorneys' commissions were disallowed upon the dismissal of an action of assumpsit for failure to comply with an order to give security for costs. In considering the same statute (R. L., §1892) under which the commissions are now sought to be taxed the court said: "The statute requires attorneys' fees to be paid by the loser in actions of assumpsit 'to be included in the sum for which execution may issue,' and to be 'assessed on the amount of the judgment obtained by the plaintiff' and 'upon the amount sued for if the defendant obtain judgment.' If this means a judgment of the same kind in the plaintiff's case as in the defendant's case it would be a final judgment and not a judgment on a dilatory plea or upon overruling a demurrer, when, according to the practice, the defendant is allowed to answer over. Although the plaintiff is a losing party on the issue made by the plea or demurrer he is not the loser intended by the statute provided the judgment obtained by the defendant is to be of the same kind as that obtained by the plaintiff. We think that the judgments intended by the statute are of the same kind whether for one party or for the other." In the case at bar, likewise, attorneys' commissions are not taxable. While the plaintiffs are the losing parties, they are not the losers intended by the statute. This particular action is, indeed, determined by the judgment, but that judgment is not upon the merits or final in form. The defendant has not "obtained judgment" within the meaning of section 1892, although it has obtained a judgment.

The two items of $60 each for traveling expenses of the defendant's witnesses McQuaid and McStocker are not taxable against the plaintiffs. These witnesses were not subpoenaed. R. L., §1891, reads: "The pay of witnesses shall be as follows: Every witness subpoenaed and attending upon the trial of any civil cause, in any court of this Territory, shall be paid the sum of one dollar for each day's attendance, and traveling expenses at the rate of ten cents a mile each way. The fees

of witnesses shall be taxable items in the bill of costs to be paid by the losing party." This statutory provision is exclusive. The only witnesses entitled to be reimbursed for their traveling expenses are those within the class there named, that is to say, those who have been subpoenaed. The language used is in this respect clear and unambiguous. The class cannot be enlarged by construction to include those not subpoenaed. The case of *Makekau* v. *Kane*, 20 Haw. 203, 214, is not to the contrary. In that case a valid subpoena was issued and the only objection made to the taxation of mileage and witness fees was that the subpoena was served by an officer not authorized by law to serve it. The witness, however, saw fit not to raise the point of possible invalidity of the service and obeyed the subpoena, thus bringing himself within the class named in the statute. Nor does the statute discriminate unjustly between witnesses who are and those who are not subpoenaed. If a witness desires to receive compensation for his attendance and reimbursement of his traveling expenses he may refuse to attend without being summoned by the court.

The item of $190 for money paid to M. M. Graham, expert witness, including attendance at trial and travel," and that of $103.50 to "W. J. Dyer, expert witness", were sworn to by one of defendant's attorneys as "actual disbursments, necessarily and reasonably incurred in defense of said cause." Whether the amount paid to the witness Graham for attendance and traveling expenses is recoverable depends upon whether the witness was subpoenaed, a fact not disclosed by the record. The fees paid to the witnesses as experts were for their services in examining books of account and otherwise preparing themselves to give testimony at the trial. The claim is made under the provision of R. L., §1889, under the title of "attorneys' fees", that "all actual disbursements sworn to by an attorney and deemed reasonable by the taxing officer, may be allowed in taxation of costs." This provision is meager and leaves much to the discretion of the court. It is difficult to define, by con-

Scott v. Kona Development Co., 21 Haw. 408.

struction, all the disbursements intended by the legislature to be taxable. It will suffice to say that in our opinion the items under consideration are not taxable. It is plain that if they were allowed, "the precedent would draw after it the expense of every preparation for trial and open the door to a flood of evil." *Mark* v. *Buffalo,* 87 N. Y. 184, 189. See also *Faulkner* v. *Hendry,* 79 Cal. 265.

The other questions argued need not be considered. The exceptions are sustained, the judgment set aside and the cause remanded with directions to grant defendant's motion for a nonsuit and to enter judgment accordingly.

*F. W. Milverton (J. W. Cathcart* with him on the brief) for plaintiffs.

*D. L. Withington* and *A. L. Castle (Castle & Withington* on the brief) for defendant.