R. G. BOOKER, Plaintiff-Appellee, *v.* MIDPAC LUMBER CO., LTD., CESARIO R. CONSTANTINO, STEWART LAI, and JOHN DOES 1-10, Defendants-Appellees, and D. N. INGMAN, Formerly Attorney for Plaintiff, Appellant

NO. 7534

(CIVIL NO. 55395)

AUGUST 6, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY NAKAMURA, J.

The question is whether the circuit court abused its discretion in setting the amount of a fee to be allowed an attorney who was discharged without cause prior to the conclusion of a personal injury case in which there purportedly was a contingent fee agreement between attorney and client. Certiorari was granted to permit a review of the intermediate appellate court's decision vacating the circuit court's order because we noted a possible discrepancy between the appellate court's ruling and our prior decision on the determination of reasonable attorneys' fees within this context. Although we have examined the record closely, we are unable to detect an abuse of discretion on the part of the circuit court, and reinstate its fee order.

I.

Plaintiff-appellee R. G. Booker (Booker) was injured in a vehicular accident on August 2, 1978; a few days later he retained Appellant David N. Ingman (Ingman) to represent him in asserting a claim for damages resulting from the accident. The attorney filed a complaint on Booker's behalf in the Circuit Court of the First Circuit against Defendants-appellees Midpac Lumber Co., Ltd., Cesario R. Constantino, and Stewart Lai on August 11, 1978. A Statement of Readiness, an Order of Notice to Set Case for Trial, and a Pre-trial Statement were filed by Ingman on February 5, 1979. Although the filing of a Statement of Readiness denoted that the case was ready for trial,[1] he had not engaged in any discovery or other preliminary proceedings authorized by the Hawaii Rules of Civil Procedure.

---

[1] Rule 12(b) of the Rules of the Circuit Courts of the State of Hawaii reads as follows:

*Statement of Readiness Is a Prerequisite.* No action shall be placed on the ready calendar of civil cases unless there has been filed a "Statement of Readiness", served as required by Rule 5 of the Hawaii Rules of Civil Procedure, which shall set forth:

(1) That the action is at issue.

(2) That all necessary or proper preliminary proceedings allowed by statute and rule have been completed by all parties; or, if such proceedings have not been completed, either that there has been a reasonable opportunity to complete them, or that the parties do not intend to conduct them.

(3) That the action is ready for trial.

Booker discharged Ingman on March 2, 1979, and requested the attorney to submit a statement of costs and fees incurred for payment. Ingman was also asked to execute a formal withdrawal of counsel and to transmit the case files to Booker. The requests were not honored; instead, Ingman filed a Notice of Lien for Attorney's Fees on March 28, 1979. Booker thereupon filed a motion seeking the attorney's removal from the case by the circuit court. Ingman was removed from the case after a hearing conducted on April 18, 1979, and new counsel was substituted in his stead. He was further ordered to release the case files.

Rather than complying with this directive, Ingman moved for a reconsideration of the order for the release of the files. Booker responded with a Motion to Strike Lien and Determine Reasonable Attorneys Fees. The motion and counter-motion were heard on May 16, 1979, and the court denied Ingman's motion. But no definitive action was taken by the court on Booker's motion, as it was continued to another date for further hearing.

When the matter was heard again on June 15, 1979, Ingman acknowledged *Carroll v. Miyashiro,* 50 Haw. 413, 441 P.2d 638 (1968), was the controlling precedent. He argued our decision there supported his position that a fee equal to "the contract amount (one-third of the ultimate recovery from the suit) less the percentage of time that opposing counsel (Booker's new lawyer, Christopher McKenzie) puts in on the case," should be approved. The circuit court, however, indicated a disinclination to accept Ingman's viewpoint and queried him extensively about the actual hours expended on Booker's behalf. The attorney admitted he maintained no record of time spent but estimated he had devoted sixty to sixty-five hours to the case. The court, however, did not accept Ingman's "guess", for in its opinion the pleadings and other documents in the file failed to substantiate this. And from a review thereof, it concluded twenty hours was a generous estimate of the time expended on the case. The court nevertheless allowed a fee in the sum of fifteen hundred dollars premised on twenty-five hours of work at an hourly rate of sixty dollars.

Ingman appealed, and the appeal was assigned to the Intermediate Court of Appeals. The appellate court concluded "that the lower court manifestly abused its discretion when it explicitly refused to consider two factors relevant to its determination of Ing-

man's fee." *Booker v. Midpac Lumber Co.*, 2 Haw. App. 569, 570, 636 P.2d 1359, 1361 (1981). In the appellate court's view *Carroll v. Miyashiro, supra,* decreed a consideration of the "contingency fee contract and the reasonably estimated value of the case." *Booker v. Midpac Lumber Co., supra,* at 573, 636 P.2d at 1363.

## II.

Courts have generally held that a client has a right to discharge his attorney without cause, for they are mindful of the delicate and confidential nature of the attorney-client relationship and the baneful consequences of friction and distrust. S. Speiser, *Attorneys' Fees* § 4:24 (1973). They further agree the presence of a contingent fee agreement does not affect this right. But there is no general agreement on how the discharged attorney who was retained under such a contract should be compensated. *Id.* at §§ 4:32-:36.

In some jurisdictions an attorney's discharge prior to the occurrence of the contingency "is regarded as putting an end to the contract, so that his recovery of compensation, if any, must be upon quantum meruit for services actually rendered." In other jurisdictions the attorney "is entitled to recover as for constructive performance." *Id.* at § 4:33. But the fee recoverable is often "the amount of the settlement or judgment ultimately realized, less a fair allowance for services and expenses not expended by the discharged attorney in performing the balance of the contract." *Id.* at § 4:34. There is, however,

> an increasing tendency to hold that an attorney employed on a contingent fee contract who is discharged without fault on his part before the happening of the contingency, is not, as a general rule, entitled to recover on the contract, but may recover merely on a quantum meruit the reasonable value of the services he rendered.

*Id.* at § 4:36 (footnote omitted). *See also* Annot., 92 A.L.R.3d 690 (1979).

As the litigants have observed, our prior involvement with the precise issue at hand has been confined to *Carroll v. Miyashiro, supra,* where the posture in which the case reached us obviated the necessity of a detailed discussion of the question. The conclusion there was also put in somewhat cryptic language; it read:

> The amount of appellant's fee shall be determined by the circuit court, upon consideration of all relevant factors, at the time of, or prior to, the final disposition of plaintiff's case against the defendants.

50 Haw. at 414, 441 P.2d at 639. That we regarded an attorney's discharge prior to the materialization of the relevant contingency "as putting an end to the contract," however, is patent. For we pointedly left the determination of the attorney's compensation to the circuit court, with further discretion to decide what was reasonable under the circumstances even before the conclusion of the client's case.

The reference to the "consideration of all relevant factors" of course required no elaboration, since we had discussed the pertinent guides for ascertaining the real value of an attorney's service shortly before then in *Sharp v. Hui Wahine, Inc.*, 49 Haw. 241, 413 P.2d 242 (1966).[2] Thus, our task here is to examine the circumstances under which the circuit court approved the fee to determine whether its

---

[2] Our full statement with respect to the guidelines reads as follows:

Comprehensive discussions of the numerous factors to be considered in determining a reasonable attorney's fee are to be found in Annotations in 143 A.L.R. 672 and 56 A.L.R.2d 13. Canon 12 of the Canons of Professional Ethics adopted by the American Bar Association has set up the following guidelines to be considered in determining the real value of the services performed by an attorney so as to be able to fix the reasonable compensation for such services:

> "In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

It closes with the admonition that:

> "In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

The Canons have been adopted as governing the conduct of the members of the Hawaii Bar by Rule 16(a) of this court. Canon 12 has been recognized as "persuasive" in *Garden v. Riley*, 116 W. Va. 723, 183 S.E. 46, 49.

49 Haw. at 244-45, 413 P.2d at 245-46.

exercise of discretion was consistent with the tenets enunciated in *Sharp*.

### III.

The Intermediate Court of Appeals concluded the circuit court's failure to consider "the contingency fee contract and the reasonably estimated value of the case" in fixing the discharged attorney's fee constituted "a manifest abuse of discretion." We do not doubt that the foregoing considerations may well be relevant and material to the determination of compensation where the attorney was retained under a contingent fee contract. Yet a review of the record convinces us that the circuit court's allowance of a fee primarily on the basis of time spent on the client's case was not necessarily error.

### A.

The transcript of the hearing to determine a reasonable attorney's fee substantiates the circuit court's appreciation of *Carroll v. Miyashiro* and its implications. The transcript further confirms the court's unsuccessful attempts to facilitate a meaningful consideration of the factors suggested in *Sharp v. Hui Wahine, Inc.* That the court sought in vain to elicit information from Ingman that might have supported the allowance of an attorney's fee on a broader basis is also a matter of record.[3] The attorney nevertheless chose to rely

---

[3] The circuit court made the following observations at about the midpoint of the hearing:

> The court tells me in that case you cite, both of you cited [*Carroll v. Miyashiro*], I determine it prior to determination of the case on all relevant facts. I'm trying to determine what you did and what relevant facts there are. The only relevant fact you have thrown to me so far is there's a contingency contract. You answered, "I didn't keep hours," but you estimate sixty - sixty-five hours. That's all I have before me. Then I look at the file, it supplements exactly what Mr. McKenzie has said. There's been no depositions taken, no interrogatories filed by you. There may have been answers filed by you, and the pleadings you filed to date are at best six pages total, period.

Tr. of June 15, 1981, at 11. But all this was to no avail. And toward the close of the hearing, the court made these comments:

> You won't get it on any other basis I'll tell you now. Because the Supreme Court — so that the Supreme Court knows how I ruled on this case, I'm trying to establish

solely on a purported contingent fee agreement,[4] argued through-
out the proceeding that *Carroll v. Miyashiro* supported his position,
and neglected to produce concrete evidence to substantiate his claim
of a fee premised on an adjusted percentage of the client's final
recovery from the defendants. A misuse of discretionary authority
cannot be imputed to the circuit court under the circumstances.

### B.

We said in *Sharp* that the "[e]xercise of discretion by the trial
judge will not be disturbed upon appellate review except for the
abuse thereof" and that "[t]his principle is applicable to a review of
the reasonableness of an allowance or award of attorneys' fees."
*Sharp v. Hui Wahine, Inc., supra,* 49 Haw. at 244, 413 P.2d at 245.
"[D]iscretion" denotes the absence of a hard and fast rule. *The
Styria v. Morgan,* 186 U.S. 1, 9. When invoked as a guide to
judicial action it means a sound discretion, that is to say, a discre-
tion exercised not arbitrarily or wilfully, but with regard to what
is right and equitable under the circumstances and the law, and
directed by the reason and conscience of the judge to a just result.
*Langnes v. Green,* 282 U.S. 531, 541 (1931) (quoted in *Cooke Trust Co.
v. Edwards,* 43 Haw. 226, 231 (1959)). We discern no unjust result
here.

Where the efforts of an attorney who was employed under a
contingent fee contract would have a tendency to advance the
client's claim or to enhance the possibility of a favorable result, we
would also conclude the contract and the reasonably estimated value

---

other relevant factors other than time. That's all I'm trying to do. I can't find any.
When lawyers charge on time basis, on contingent basis, on the value of the
services rendered, on the difficulty of it, on novelty, all these factors, but I don't
find anything in this case justifying me to find novelty or value of work done for
me to give you a fee on an hourly basis. And I'm trying to double that time and I
still can't come up with anything worth — I'm trying to do everything I can to give
you a fee, but you don't give me any basis for doing so.

The attorney's response to the foregoing was:

Well, but you're ignoring the basic thing, the contract that I had with my client.

*Id.* at 14-15.

[4] Although the attorney claimed he had a written agreement with the client, he
failed to produce it even when the court requested him to do so.

of the case should be considered in fixing a reasonable attorney's fee. For "the real value of the service" encompasses "the benefits resulting to the client." *Sharp v. Hui Wahine, Inc., supra,* 49 Haw. at 244-45, 413 P.2d at 245. But the circuit court in this instance perceived no reason to incorporate the foregoing considerations into its determination of a reasonable fee primarily because the attorney presented no grounds therefor.

We emphasized in *Sharp,* that the considerations delineated therein are "mere guides in ascertaining the real value of the service." *Id.* at 245, 413 P.2d at 246. Nor is there a requirement that each of them be taken into account in every case. The message in *Sharp* is that a reasonable attorney's fee is one that is fair to both attorney and client under the particular circumstances involved. And a contingent fee agreement, without more, is not good reason for boosting an attorney's compensation or denying him a fee that adequately compensates him for actual services performed.

The decision of the Intermediate Court of Appeals is reversed, and the order of the circuit court is reinstated.

D. N. *Ingman,* pro se, Formerly attorney for plaintiff, appellant.

*Christopher P. McKenzie (McKenzie, Trecker & Fritz,* of counsel) for plaintiff-appellee.

### DISSENTING OPINION OF LUM, J.
### WITH WHOM MENOR, J., JOINS

I respectfully dissent.

It is easy to see why the majority decided to reverse the Intermediate Court of Appeals. The majority's perception of the facts is different from that of the Court of Appeals. The Court of Appeals examined the transcript covering the hearing held by the trial judge[1] and concluded, as I do, that the trial judge refused to consider the factor of the contingency nature of the contract and the reasonable

---

[1] MR. INGMAN: Well, it's a rather complicated thing. I mean, the case is worth more than a hundred thousand, Your Honor.

THE COURT: It doesn't matter what's the case worth. I want to know what you did. You keep going back to the contingency. I'm not going to worry about contingency. I want to know what you did.

estimated value of the case in the award of attorney's fee. The majority, however, concludes from reading the same transcript that Attorney Ingman failed to furnish supportive information for the court to consider these factors. I submit that the lack of supportive information goes to the weight of the appropriate relevant factors but is not justification to disregard completely the contingency nature of the contract and the reasonable estimated value of the case.

I also express concern about the majority's subscription to a principle of enhancement or advancement under a contingency contract as a precondition to the court's consideration of the contingency nature of the contract and the reasonable estimated value of the case. Such a requirement only muddles the situation and denies discretion, when in fact the majority is attempting to preserve it, since it gives absolute weight to one factor over the others.