PABLO LANGAMAN, JR., Plaintiff-Appellant *v.* MIKE SALTA PONTIAC, INC., Defendant, and BANK OF HAWAII, Defendant-Appellee

NO. 8276

(CIVIL NO. 52681)

FEBRUARY 16, 1983

(AMENDED MARCH 7, 1983)

BURNS, C.J., HEEN AND TANAKA, JJ.

AMENDED OPINION OF THE COURT BY BURNS, C.J.

Plaintiff-Appellant Pablo Langaman, Jr. (Langaman) appeals the denial of his request for $13,158.00 as reasonable attorney's fees and the award of only $69.42. We reverse and remand for a redetermination of the amount of the award.

The two dispositive issues in this case and our answers to them are:

I. Whether Hawaii Revised Statutes (HRS) section 607-14 (1976)[1] limits the amount of reasonable attorneys' fees that may be awarded under HRS section 476-19 (1976).[2] No.

II. Whether the trial court abused its discretion when it awarded only $69.42 as reasonable attorney's fees. Yes.

On October 18, 1974, Langaman executed a retail installment sales contract and thereby purchased a 1971 Ford automobile from defendant Mike Salta Pontiac, Inc. (Salta) who,

---

[1] § 607-14 Attorneys' fees in actions in the nature of assumpsit. In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:

25 per cent on first $1,000 or fraction thereof.
20 per cent on second $1,000 or fraction thereof.
15 per cent on third $1,000 or fraction thereof.
10 per cent on fourth $1,000 or fraction thereof.
5 per cent on fifth $1,000 or fraction thereof.
2.5 per cent on any amount in excess of $5,000.

[2] § 476-19 Failure to comply; remedy of buyer. In case of failure of the seller or holder to comply with this chapter, the buyer has the right to recover from the seller or holder, as the case may be, an amount equal to the finance charge or ten per cent of the cash price if no finance charge is specified in the contract or supplementary statement, whichever is the greater, plus reasonable attorney's fees.

on October 18, 1974, assigned its interest in the contract to defendant-appellee Bank of Hawaii (Bank). On August 12, 1976, Bank repossessed the automobile. By then, Langaman had paid approximately $1,812.40 of the $2,140.80 total deferred payment price. On September 3, 1976, Bank reassigned the contract to Salta and on that day, Salta resold the car to Ridgeway Motors for $325.00.

By letter dated August 29, 1977, Langaman demanded from Bank a total of $2,154.28[3] plus reasonable attorney's fees.

On September 30, 1977, Langaman, represented by the Legal Aid Society of Hawaii (LASH), and proceeding *in forma pauperis,* sued Salta and Bank. By stipulation and order filed on January 9, 1979, the complaint was dismissed as to Salta.

On May 2, 1979, Bank filed a pretrial statement in which it stated *inter alia:*

### Settlement Posture

Since Defendant BANK OF HAWAII feels it has not violated any of the relevant provisions of the Act or the Code, and in view of Plaintiff's unreasonable demands of three times the finance charge, plus late charges, plus ten percent (10%) of the amount financed, plus the resale value of the car, plus costs and attorney's fees, and Plaintiff having received $750.00 from Defendant MIKE SALTA PONTIAC, INC., it is Defendant BANK OF HAWAII's belief that further settlement negotiations would be nonproductive.

On May 18, 1979, Langaman filed an amended complaint alleging eight claims:

First cause of action:

28. The bank violated the Uniform Commercial Code and the Retail Installment Sales Act in the following respects:

---

[3] $1,425.00 cash purchase price ($1,749.00) less resale price ($325.00)
452.59 penalty under the Uniform Commercial Code
277.69 penalty under the Retail Installment Sales Act equal to the amount of the finance charge under the contract
Although these figures add up to $2,155.28, Langaman demanded only $2,154.28.

(a) The bank violated § 476-28[4] H.R.S. and § 490:9-505(2) by failing within 5 days of the repossession to elect either to keep the car and release Mr. Langaman from further obligation, subject to Mr. Langaman's right within 30 days of notice of the Bank's election to demand a resale, or in the alternative to return the car and waive its security interest.

(b) When the bank sent a repossessor to Mr. Langaman's house and demanded that the entire balance of the contract be paid or the automobile surrendered, without giving Mr. Langaman advance notice that it would no longer be willing to accept his late payments, the bank violated § 490:9-503 H.R.S.

(c) Since the Retail Installment Contract was originally assigned to the bank without recourse, the private transfer of the automobile back to the dealer did not constitute a commercially reasonable sale, and was a violation of § 490:9-504(3) H.R.S.

(d) The bank failed to obtain a fair price for the automobile when it sold it to the dealer, in violation of § 476-26 H.R.S.

(e) The bank failed to send Mr. Langaman notice of proposed private transfer of the automobile to the dealer as required in consumer transactions by § 476-26[5] and § 490:9-504(3) H.R.S. in that:

(i) The content of the certified letter was only a notice of the right of redemption and did not contain the required information for notice of resale.

(ii) When the certified letter was returned by the post office, the bank failed to make further efforts to notify Mr. Langaman at his last known address that it intended to sell the car.

(f) The bank failed to send Mr. Langaman any notice that he was in default on the contract before threatening Mr. Langaman with responsibility to pay a

---

[4, 5, 6] Section 476-24 to 476-28, HRS, was repealed by Act 135, 10th State Legislature, Regular Session 1980, effective May 27, 1980.

towing fee in the event the car was not driven back to the automobile dealer's place of business, in violation of § 476-25[6] H.R.S.

(g) In threatening to call a tow truck to repossess the car over Mr. Langaman's objections, the bank's repossessor impliedly threatened the use of force and unfairly coerced Mr. Langaman into believing that he had no choice but to drive the automobile back to the dealer himself.

(Footnotes added.)

Second cause of action:

34. The Bank acted wilfully and with malice.

35. By reasons of the above conversion the bank is liable to Mr. Langaman in an amount equal to the value of the automobile at the time of repossession, plus damages for loss of use of the automobile, plus punitive damages in the amount of $1,000.00.

Langaman prayed for the following relief:

*AS TO THE FIRST CAUSE OF ACTION:*

1. Award Plaintiff his actual damages, but in any event not less than a sum equal to the finance charge plus 10% of the amount financed on the Retail Installment Contract. Pursuant to §§ 476-19 and 476-22 Plaintiff calculates his damages as the sum of the finance charge assessed on the contract plus the sum of all finance charges and late charges paid.

*AS TO THE SECOND CAUSE OF ACTION:*

2. Award Plaintiff damages in the amount of the value of the automobile at the time of repossession.

3. Award Plaintiff damages in the amount of $500 for loss of use of the automobile.

4. Award Plaintiff punitive damages in the amount of $1,000.00.

*AS TO BOTH CAUSES OF ACTION:*

5. Award Plaintiff reasonable attorney's fees and costs of court and such other and further relief as this Court deems appropriate.

On May 23, 1979, Langaman moved for a summary judgment on all of his allegations. On May 30, 1979, Bank filed a

Cross-Motion for Summary Judgment and contended *inter alia:*

Plaintiff has failed to show entitlement to general, special, and punitive damages directly resulting from unlawful repossession and resale; and any such damage shown has been compensated fully by Plaintiff's receipt of $750 in settlement with that defendant which did resell the car at foreclosure.

On August 23, 1979, Judge Fong filed an order which stated:

NOW, THEREFORE, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment shall be, and the same hereby is, denied, save and except that Plaintiff shall and does hereby have partial summary judgment on the issue as to whether Defendant had a duty under Section 476-25, Hawaii Revised Statutes, to give prior notices of repossession and Defendant's Cross-Motion for Summary Judgment shall be, and the same hereby is, granted, except as mentioned hereinabove; and

The Court makes the following findings of fact:

1. That Plaintiff failed to provide Defendant with any information relative to residence addresses where Plaintiff would accept and receive notices, and other information relative to the location of the automobile; and

2. That Defendant sent and Plaintiff admittedly received written notices of nonpayment, delinquency and default; and

3. That Defendant did not send or provide Plaintiff written notice of intended repossession prior to such repossession; and

The Court concludes as a matter of law that Defendant had a duty under Section 476-25, Hawaii Revised Statutes, to send or provide such prior notice of repossession; and

THEREFORE, upon the foregoing findings and conclusions, and all other issues being hereby resolved, the issues hereinafter specified shall be, and hereby are, reserved for trial:

1. Whether Plaintiff's conduct and failure to provide residence addresses and related information constitutes a waiver of prior notice of repossession, or whether such

conduct excused Defendant from performance of its duty, or whether Plaintiff by such conduct is estopped from asserting Defendant's failure, to send or provide Plaintiff prior written notice of repossession; and

2. If there was no waiver, excuse, or estoppel, whether and in what amount is Plaintiff entitled to damages resulting from Defendant's failure to send or provide such prior notice of repossession; and

IT IS FURTHER ORDERED that the trial earlier scheduled to commence the week of July 15, 1979, shall be and the same hereby is, reset to commence the week of Dec. 17, 1979.

The trial actually commenced on April 2, 1980. On March 11, 1980, Langaman's attorney wrote to Bank's attorney:

Please be advised that Plaintiff will settle this case upon receipt of the sum of $500.00 from Defendant. Please convey this offer to your client. This offer will remain open until the hearing in court on March 12, 1980 or until the hearing is continued by agreement.

Bank rejected the offer.

On April 2, 1980, Judge Chang approved a stipulation which stated in relevant part: "[T]rial shall be had . . . solely on the issues reserved for trial as specified in said Orders [sic] dated August 23, 1979."

After a two-day bench trial, Judge Chang reversed the prior orders and concluded:

18. The Court concludes as a matter of law that Defendant had no duty under Section 476-25, Hawaii Revised Statutes, to give prior notice of repossession, and the Court further concludes that Defendant did not violate those statutory provisions in any way. In particular, the Court concludes that Section 476-25, Hawaii Revised Statutes, does not require Defendant to give notice prior to repossession that it intends to repossess goods which are the subject of the retail installment contract.

19. The Court concludes as a matter of law that Defendant violated Section 476-28, Hawaii Revised Statutes, by failing within five days of the August 12, 1976 repossession to elect either to keep the car in satisfaction of

the debt, and releasing Plaintiff from further contractual obligation, or to return the car to Plaintiff and pursue him upon the contract.

20. Pursuant to Section 476-19, Hawaii Revised Statutes, and by reason of Defendant's violation of Section 476-28, Hawaii Revised Statutes, Plaintiff is entitled to judgment against Defendant for the amount of $277.69, which is the amount of the finance charge stated in the contract, plus costs of Court and reasonable attorney's fees.

Thereafter, Langaman moved for an award of attorney's fees under HRS section 476-19 (1976). He asked for "$13,158, representing 146.2 hours at $60 per hour with a 150% [sic] contingency bonus . . . ," to account for the risk of nonrecovery as suggested in Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. Pa. L. Rev. 281, 315-328 (1977).[7]

On October 6, 1980, the lower court filed an Order Awarding Attorney's Fees. In relevant part, the order stated:

The bulk of the work of the lawyer in this case had to do primarily with the pursuit of the two causes of action in both the original Complaint and the Amended Complaint, other than the cause of action involving Section 476-28, H.R.S. As to those causes of action other than under Section 476-28, the Plaintiff did not prevail in the trial. Plaintiff did not prove, nor did Plaintiff receive judgment for any of the factual basis of liability alleged in the original or Amended Complaint in either causes of action, except under Section 476-28.

. . .

---

[7] If, viewed from the perspective of a reasonable attorney looking at the case from its outset, success was virtually assured, there has been no significant risk and there should be no adjustment. If the court concludes that success was more likely than not at the outset, an increase in the fee award in the range of fifty percent would be appropriate. Where the court concludes that the chance of success was about even at the outset, an increase in the hourly rate in the range of 100% appears appropriate. Finally, if the case appeared unlikely to succeed when initiated, an increase of the basic hourly rate of up to 200% may be justified to compensate the attorney for the substantial risk undertaken.

Berger, *supra*, 126 U. Pa. L. Rev. at 326.

Based on the foregoing, it is the opinion of the Court that the vast majority of the volume of work done in this case was done for claims for which the Plaintiff did not prevail, and therefore it is not reasonable to award attorney's fees on that basis. Also, the damages claimed by Plaintiff under both causes of action appear to be well within the jurisdiction of the District Court, and the Court is wondering why this case was not filed in the District Court, especially since no jury trial was demanded.

In all actions in the nature of assumpsit, what is reasonable attorney's fees has already been determined by a fee schedule found in H.R.S. Section 607-14. H.R.S. Section 607-14 provides that the losing party in an assumpsit action shall be assessed an amount which shall not exceed 25 per cent on the first $1,000.00 or fraction thereof of the judgment obtained by the prevailing party, exclusive of costs.

Plaintiff Langaman is entitled to attorney's fees in the amount of $69.42 (25 per cent of $277.69), and judgment will be entered accordingly.

Langaman appeals the award of only $69.42 for attorney's fees and contends that the lower court abused its discretion under HRS section 476-19, *Booker v. Midpac Lumber Co., Ltd.,* 65 Haw. 166, 649 P.2d 376 (1982), *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), and *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 413 P.2d 242 (1966). We agree.

The Bank agrees that $60.00 is a reasonable hourly rate for Langaman's attorney's services. It disputes Langaman's entitlement to payment for all the time spent by LASH on the case. At the hearing on the motion for fees, Bank's counsel stated, "We believe that Mr. Kanter is entitled to a fee somewhere in the neighborhood of five hundred and a thousand dollars."

I.

We agree that HRS section 607-14 does not apply in this case. Section 607-14 applies only to "actions in the nature of assumpsit" and it mandates an arbitrary maximum limit to reasonable fees. It does not apply to attorney's fees awarded under HRS section 476-19 because actions under chapter 476

are not in the nature of assumpsit and because section 476-19 authorizes the award of reasonable attorney's fees without any arbitrary maximum limitation.

II.

In his amended complaint, Langaman alleged eight claims. Judge Fong's order of August 23, 1979 awarded the Bank partial interlocutory summary judgment as to all of Langaman's claims except his HRS section 476-25 claim. Both Judge Fong's order of August 23, 1979 and Judge Chang's order of April 2, 1980 limited the issues for trial to questions relating to Langaman's HRS section 476-25 claim. At the trial, Judge Chang found for Bank on Langaman's HRS section 476-25 claim but partially reversed Judge Fong's prior partial interlocutory summary judgment and found for Langaman on his HRS section 476-28 claim.

Unquestionably, the award of only $69.42 was an abuse of discretion which necessitates that we reverse and remand for a new decision. In an effort to aid the trial court on remand, we will give some preliminary guidance on some of the issues involved.

First, we do not believe that Langaman's request for a 50% bonus to account for the risk of nonrecovery is reasonable. It must be remembered that we are talking about Langaman's entitlement from Bank, not Langaman's obligation to his attorney. In essence, Langaman is asking for $90.00 per hour of his attorney's time rather than $60.00 because of the possibility that he might have lost and not be entitled to any recovery. Since he is not entitled to an award of fees if he loses, he ought not be allowed to use that possibility to enhance his award when he wins.

Second, Langaman asserted eight claims against Bank. Two (28(b) and (c)) were alleged to be claims solely under the Uniform Commercial Code - Secured Transactions (HRS chapter 490:9) (UCC), two (28(d) and (f)) were alleged to be solely under the Retail Installment Sales Act (HRS chapter 476) (RISA), two (28(a) and (e)) were alleged to be under both the UCC and the RISA, and two (28(g) and 34) did not refer to any basis. The trial court will have to decide what were the

statutory or other legal bases for the stated claims.

In our view, Langaman is entitled to fees only for services rendered on those claims for which he would have been entitled to fees if he won. He is not permitted to use his entitlement to fees for some claims to bootstrap an entitlement to fees for other claims for which fees are not authorized.

Section 476-19, HRS, entitled Langaman to "reasonable attorney's fees" for his RISA claims. The trial court will have to decide whether Langaman would have been entitled to "reasonable attorney's fees" for his other claims.

Third, Langaman is entitled to reasonable fees for reasonable services rendered[8] on all nonfrivolous claims in a particular category (RISA, UCC, or others) if he was victorious on at least one claim in that category.

Under these guidelines, it is obviously possible for the amount of the attorney's fees to exceed the amount in controversy or the amount won. We point out, however, that Bank could have avoided paying fees for services on claims which it won and Langaman lost by the proper use of Rule 68, HRCP.[9] If Bank had made a sufficient offer of judgment on each or all of Langaman's claims, then Bank would not be liable to pay for Langaman's attorney's services performed after the offer was made. Likewise, if Bank had made a sufficient offer of judgment on Langaman's HRS section 476-28 claim and Langaman had no other winning claims, then Bank would not be liable to pay for any of Langaman's attorney's services performed after the offer was made.

Reversed and remanded for further proceedings consistent with this opinion.

*John Harris Paer* (*Cheryl Tipton* with him on the briefs; Legal Aid Society of Hawaii) for plaintiff-appellant.

*Leroy T. Kuwasaki, Jr.,* for defendant-appellee.

---

[8] *See Booker v. Midpac Lumber Co., Ltd.,* 65 Haw. 166, 649 P.2d 376 (1982); *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978); and *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 413 P.2d 242 (1966).

[9] Rule 68 "encourages settlements and discourages vexatious suits and thus diminishes the burden of litigation." 12 Wright & Miller, Federal Practice and Procedure: § 3001 (1973). We encourage the proper use of Rule 68.