**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000865
29-JUL-2021
07:51 AM
Dkt. 55 SO**

NO. CAAP-17-0000865

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


GREG BOWERS, Plaintiff-Appellee, v.
JAMES M. WINQUIST, TRANCITA K. WINQUIST,
Defendants-Appellees,
and
DOE DEFENDANTS 1-10, Defendants
and
TIMOTHY I. MAC MASTER,
Real Party in Interest-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-1677; 1CC141001677)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

Real Party in Interest-Appellant Timothy I. Mac Master
(**Mac Master**) appeals from the November 7, 2017 "Order Granting in
Part and Denying in Part . . . *Mac Master's Motion to Enforce
Attorney's Lien* Filed September 8, 2017" (**Order**), entered in the
Circuit Court of the First Circuit (**Circuit Court**).[1]

Mac Master and Plaintiff-Appellee Greg Bowers (**Bowers**)
had an attorney-client relationship under the terms of a
contingent fee agreement.  Mac Master withdrew as Bowers's
counsel after Bowers decided to reject a Court Annexed
Arbitration Program (**CAAP**) award of $21,200 and to request a
trial *de novo* on his claim against Defendants-Appellees James M.
Winquist and Trancita M. Winquist.  Mac Master ended his

---

[1]    The Honorable Keith K. Hiraoka presided.

representation of Bowers based on a purported right under the
contingent fee agreement to terminate the attorney-client
relationship at any time for any reason.  Bowers then hired new
counsel who did further work on his case and ultimately helped
Bowers settle his claim for $24,000.

Following the settlement, Mac Master filed a motion to
enforce an attorney's lien in the amount of $7,800 (**Motion**).
After a hearing on the Motion, the Circuit Court ordered that the
attorney's lien be enforced in the amounts of $4,000 in
attorney's fees and $515 in case costs, and denied the Motion as
to all other claimed fees and case costs.

On appeal, Mac Master contends that the Circuit Court
erred in:  (1) denying Mac Master's request for an evidentiary
hearing governed by the Hawaii Rules of Evidence (**HRE**); (2)
adjudicating the Motion without first conducting an evidentiary
hearing governed by the HRE; (3) disregarding the requirements of
Hawaii Revised Statutes (**HRS**) § 507-81(b)(1) (quoted infra); and
(4) denying Mac Master's request for findings of facts and
conclusions of law supporting the Order.

Upon careful review of the record and the briefs
submitted by the parties and having given due consideration to
the arguments advanced and the issues raised by the parties, we
resolve Mac Master's points of error as follows and affirm.

(1) Mac Master's first two points of error rely on his
assertion that HRE Rule 101 and the due process clause of article
1, section 5 of the Hawaiʻi Constitution "required [that] the
Circuit Court conduct an evidentiary hearing governed by the
[HRE] before deciding the Motion."  This argument is without
merit.

HRE Rule 101 provides that the Hawaii Rules of Evidence
"govern proceedings in the courts of the State of Hawaii, to the
extent and with the exceptions stated in rule 1101."  HRE Rule
1101, in turn, states in relevant part that "[t]hese rules apply
to all courts of the State of Hawaii except as otherwise provided
by statute[,]" and "[t]hese rules apply generally to civil and
criminal proceedings."  Nothing in HRE Rules 101 or 1101 requires
a trial court to conduct an evidentiary hearing before deciding a

2

motion to enforce an attorney's lien or other motion governed by the HRE. Further, Mac Master cites no Hawaiʻi case law or other authority construing the HRE to require an evidentiary hearing in these circumstances. There is none.

Rather, Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 43(e) provides:

> **Evidence of motions.** When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.

See also Rules of the Circuit Courts of the State of Hawaiʻi (**RCCH**) Rule 7(g) ("In lieu of an affidavit, an unsworn declaration may be made by a person, in writing, subscribed as true under penalty of law, and dated, in substantially the [prescribed] form[.]") Here, again, nothing in HRCP Rule 43(e) requires a trial court to conduct an evidentiary hearing before deciding a motion to enforce an attorney's lien, and contrary to Mac Master's assertion, there is no conflict between HRCP Rule 43(e) and HRE Rule 1101. Trial courts in Hawaiʻi routinely decide motions on the basis of affidavits or declarations, subject to the HRE as applicable, without taking oral testimony or having documentary evidence introduced through live witnesses. See, e.g., HRCP Rule 56(e).

In a similar vein, Mac Master cites no Hawaiʻi case law or other authority construing the Hawaii Constitution's due process clause to require an evidentiary hearing in analogous circumstances. There is none. "[D]ue process is not a fixed concept requiring a specific procedural course in every situation." In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 241, 151 P.3d 717, 722 (2007) (quoting State v. Guidry, 105 Hawaiʻi 222, 234, 96 P.3d 242, 254 (2004)). Rather, due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest." Id. (quoting State v. Bani, 97 Hawaiʻi 285, 293, 36 P.3d at 1255, 1263 (2001)).

Here, on September 8, 2017, Mac Master filed the Motion, along with a supporting declaration, several attached

exhibits, and a memorandum of law, pursuant to HRCP Rules 7(b) and 17, and consistent with HRCP Rule 43(e) and RCCH Rule 7(g). On October 12, 2017, the Circuit Court heard the Motion. Before hearing oral argument, the court stated its "inclination . . . to enforce the attorney's lien, but not in the amount requested by Mr. Mac Master." The court explained:

> And the Court's reasoning is, that all contracts for legal services are subject to the Hawaii Rules of Professional Conduct. And, in fact, paragraph 13 of Mr. Mac Master's fee agreement acknowledges this.
>
> The Court reviewed the fee agreement, and several of the provisions appear to be potentially contrary to the requirements of the Hawaii Rules of Professional Conduct. And also, paragraph 7 appears to be contrary to Formal Opinion 28 of the Office of Disciplinary Counsel, as well as to Rules 1.6 and 1.16 of the Hawaii Rules of Professional Conduct.
>
> Now, in addition, the Court notes that paragraph 11 of the fee agreement appears to be contrary to Professional Conduct Rule 1.2(a).
>
> Paragraph 9 of the fee agreement, which is the provision at issue, violates Professional Conduct Rule 1.16 to the extent it gives the lawyer the unilateral right to terminate representation of the client, quote, for any reason, end quote.
>
> The Court notes that if Mr. Mac Master had moved to withdraw, based upon the record presented on this motion, the Court would likely have denied the withdrawal based on Professional Conduct Rule 1.2(a), which states, A lawyer shall abide by a client's decision whether to settle a matter; and also based on Professional Conduct Rule 1.16(b) regarding when a lawyer may withdraw from representing a client.
>
> So Mr. Mac Master's reply memo correctly states that the issue for the Court to determine on this motion is whether $7,800 is a reasonable fee for the services that Mr. Mac Master provided to Mr. Bowers. And the Court notes that that's not totally correct, because the fee being claimed is $7,000, and $800 represents the costs, as the Court understands the argument.
>
> So in making the determination of the reasonableness of the fee, the Court is guided by the factors set forth by the court of appeals in *Riley*, . . . against *Osako*, . . . and by Professional Conduct Rule 1.5. Rule 1.5 states that a lawyer shall not collect an unreasonable fee.
>
> The non-exhaustive list of factors to consider under Rule 1.5 includes, quote, the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the experience and ability of the lawyer performing the services; and in contingency fee cases, the conscionability of the fee in light of the net recovery to the client.

4

In addition to the rule, the court of appeals instructs the Court to look at, among other things, the skill requisite to properly conduct the cause and the amount involved in the controversy and the benefits resulting to the client from the services.

So the Court expects that lawyers should manage their client's expectations by explaining the law as applied to the facts known at the time, including, when applicable, the principle and effect of modified comparative negligence in this jurisdiction.

The Court notes, that, based upon a review of the documentation provided by Mr. Bowers, as the Court understands the facts of the case, the potentially recoverable special damages at the time the Complaint w[as] filed were only $16,175.91. . . .

. . . .

. . . [E]ven if the lawsuit had been filed on the eve of the statute of limitations, . . . the specials would only have been $22,923.86.  However, what this indicates is that there may have been a failure to manage Mr. Bowers' reasonable expectations at the beginning of the lawsuit, and that may have affected the relationship between attorney and client after the CAAP award came out.

Now, the Court also notes that Arbitration Rule 19 allows the arbitrator to award costs. . . .  So the Court finds that the failure to request costs as part of a CAAP proceeding calls into question the experience and the ability of the lawyer.

So the primary factor the Court is looking at -- or the primary factors the Court is looking at is, because this is a contingency case, the Rule 1.5 factor of conscionability of the fee in light of the net recovery to the client; and also under the *Riley* case, the amount involved in the controversy -- or the Court should state, the amount reasonably involved in the controversy and the benefits resulting to the client from the services.

So it's the Court's inclination to, as I said, enforce the lien, but at a reduced amount.

Mr. Mac Master, I'll hear argument from you first.

The Circuit Court then heard extensive oral argument from Mac Master, as well as argument from the parties, before ruling on the Motion.  It was not until after Mac Master completed his oral argument that he stated:  "Just for the record, we . . . are requesting an evidentiary hearing, Your Honor."  Mac Master did not identify any additional evidence that he sought to make part of the record via an evidentiary hearing or otherwise indicate why an evidentiary hearing was necessary. The Circuit Court denied Mac Master's request for an evidentiary hearing.

5

We conclude that under these circumstances, Mac Master was afforded an opportunity to be heard at a meaningful time and in a meaningful manner with respect to the Motion, and that due process did not require an evidentiary hearing.  See In re Guardianship of Carlsmith, 113 Hawaiʻi at 241, 151 P.3d at 722; see also Gold v. Harrison, 88 Hawaiʻi 94, 106-07, 962 P.2d 353, 365-66 (1998) (the circuit court did not deny a sanctioned attorney due process by failing to hold an evidentiary hearing on the sanctions, where the attorney received notice and a hearing on the sanctions motion and "did not explain what evidence he planned to introduce or otherwise indicate why an evidentiary hearing was necessary").  Accordingly, the Circuit Court did not abuse its discretion in denying Mac Master's request for an evidentiary hearing or in deciding the Motion without an evidentiary hearing.

(2) In his third point of error, Mac Master contends that the Circuit Court erred "when it disregarded the requirements of HRS § 507-81(b)(1), which entitles Mr. Mac Master to an attorney's lien in the amount of '[t]he fees and compensation specifically agreed upon with the client.'" (Formatting and capitalization altered.)  This argument is also without merit.

HRS § 507-81 (2018) states, in relevant part:

> **Attorney's lien upon actions and judgments.**  (a) An attorney has a lien upon:
>
> (1)   Actions, suits, and proceedings after commencement of the action or arbitration proceeding;
>
> (2)   Judgments, decrees, orders, settlements, and awards entered by the court or an arbitrator in favor of the client; and
>
> (3)   Any proceeds paid in satisfaction of the judgment, decree, order, settlement, or award.
>
> (b)   The lien shall be for:
>
> (1)   The fees and compensation specifically agreed upon with the client;
>
> (2)   The reasonable value of the services of the attorney, if there is no fee agreement;
>
> (3)   Any costs advanced by the attorney; and

> (4) Any fees or commissions taxed or allowed by the court.

In Riley v. Osaka, No. CAAP-15-0000399, 2016 WL 3615610 (Haw. App. June 30, 2016) (SDO), this court summarized the prevailing case law regarding the enforcement of an attorney's lien under HRS § 507-81(b)(1) as follows:

> Before granting a contractually-based award of attorney's fees, the circuit court is required to consider the reasonableness of the fees. See Booker v. Midpac Lumber Co., 65 Haw. 166, 172, 649 P.2d 376, 381 (1982) (holding, where an attorney was discharged without cause prior to the conclusion of a personal injury case, that "a contingent fee agreement, without more, is not good reason for boosting an attorney's compensation or denying him a fee that adequately compensates him for actual services performed"). In general, an appellate court must "examine the circumstances under which the circuit court approved the [attorney's] fee to determine whether its exercise of discretion was consistent with the tenets enunciated in Sharp [v. Hui Wahine, Inc., 49 Haw. 241, 413 P.2d 242 (1966)]." Booker, 65 Haw. at 170–71, 649 P.2d at 379. In Sharp, the Hawaiʻi Supreme Court put forth the following guidelines for determining the reasonableness of attorney's fees when the fees are provided for by contract:
>
>> Comprehensive discussions of the numerous factors to be considered in determining a reasonable attorney's fee are to be found in Annotations in 143 A.L.R. 672 and 56 A.L.R.2d 13. Canon 12 of the Canons of Professional Ethics adopted by the American Bar Association has set up the following guidelines to be considered in determining the real value of the services performed by an attorney so as to be able to fix the reasonable compensation for such services:
>>
>>> "In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

7

It closes with the admonition that:

> "In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

The Canons have been adopted as governing the conduct of the members of the Hawaii Bar by Rule 16(a) of this court.

Booker, 65 Haw. at 170 n.2, 649 P.2d at 379 n.2 (quoting Sharp, 49 Haw. at 244-45, 413 P.2d at 245-46). The considerations delineated in Sharp are to be considered "mere guides in ascertaining the real value of the service [rendered]." Booker, 65 Haw. at 172, 649 P.2d at 381.

In sum, the Hawaiʻi Supreme Court has held:

> Where the efforts of an attorney who was employed under a contingent fee contract would have a tendency to advance the client's claim or to enhance the possibility of a favorable result, we would also conclude the contract and the reasonably estimated value of the case should be considered in fixing a reasonable attorney's fee.

Booker, 65 Haw. at 172, 649 P.2d at 381. "'[T]he real value of the service' encompasses 'the benefits resulting to the client.'" Id. (quoting Sharp, 49 Haw. at 244-45, 413 P.2d at 245).

Id. at *1-2.

Here, the Circuit Court expressly considered the principles set forth in Riley, as well as Hawaiʻi Rules of Professional Conduct (**HRPC**) Rule 1.5,[2] to determine the

---

[2] HRPC Rule 1.5 states, in relevant part:

Rule 1.5. FEES.

(a) **Reasonableness of Fee**. A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(continued...)

8

reasonableness of the contractually-based fee award requested in the Motion.  After stating its inclination and hearing oral argument, the Circuit Court ruled as follows:

> [I]n a case like this where a contingency fee agreement is involved, the amount of time spent is not the sole or even the primary determining factor of the reasonableness of a fee.  Rather, as mandated by Rule 1.5, and as reinforced by the *Riley* case, a lawyer's fee must be reasonable.  And in determining reasonableness of a fee, in contingency fee cases the net recovery to the client is a primary factor, and also the benefit resulting to the client from the services.
>
> And another factor is the fee customarily charged in the locality for similar legal services.  And the Court takes judicial notice that in enumerable cases that the Court has been involved in both in private practice and as a settlement judge, counsel have adjusted their fees, when appropriate under the circumstances, to effectuate a settlement.
>
> So I'm going to rule on . . . two matters separately.  On the lien for fees, the lien shall be enforced.  The Court finds that a reasonable fee for Mr. Mac Master, under the circumstances as shown by the record in this case, is $4,000.
>
> On the claim for costs, other than the amount of the filing fee, which is going to be shown in the court file -- the documentation in the court file, the costs are denied because there has not been any evidentiary foundation or documentation supplied.

Thus, based on the relevant facts and circumstances, including that Bowers ultimately recovered a $24,000 settlement after Mac Master withdrew as his counsel, the Circuit Court applied HRPC Rule 1.5 and the principles set forth in Riley to determine that a reasonable fee for Mac Master's services was $4,000.  The court also awarded $515 in case costs to Mac Master based on the documentation in the court file.

---

(continued...)

> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent, and in contingency fee cases the risk of no recovery and the conscionability of the fee in light of the net recovery to the client.

Mac Master argues that he and Bowers "made an oral agreement that the amount of Mr. Mac Master's attorney's lien would be reduced to, and fixed at, $7,800." (Formatting and capitalization altered.) However, the fees requested pursuant to this alleged oral agreement, which was itself a product of the written contingent fee agreement,[3] were subject to the Circuit Court's determination of their reasonableness. Riley, 2016 WL 3615610, at *1. On this record, we conclude that the Circuit Court did not abuse its discretion in determining that a reasonable fee for Mac Master's services was $4,000. We further conclude that the Circuit Court did not abuse its discretion in enforcing Mac Master's lien in the amounts of $4,000 in attorney's fees and $515 in case costs, and in denying the Motion as to all other claimed fees and case costs.

(3) In his fourth point of error, Mac Master contends that "[t]he failure of the Circuit Court to issue an Order that contains adequate findings of fact and conclusions of law violates . . . Mac Master's [a]rticle 1, [s]ection 5 rights to due process and prevents proper appellate review of the Circuit Court's actions[.]" This argument also lacks merit.

Mac Master cites no Hawaiʻi case law or other authority construing the Hawaiʻi Constitution's due process clause to require a trial court to issue written findings of facts and conclusions of law in analogous circumstances. Cf. HRCP Rule 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in subdivisions (b) and (c) of this rule."). Further, we reject Mac Master's assertion that the absence of written findings of fact and conclusions of law in these circumstances "impedes effective judicial review." During the hearing on the Motion, the Circuit Court provided a thorough

---

[3]     Mac Master terminated his representation of Bowers pursuant to the written contingent fee agreement. Moreover, Mac Master stated in his declaration supporting the Motion that "[t]he agreement to reduce the attorney's lien amount" was made in part because "$7,000 represents about one third (i.e. 33.3%) of the CAAP award that Mr. Mac Master helped Mr. Bowers obtain[,]" i.e., the same percentage of the client's ultimate recovery that Mac Master was to receive under the written contingent fee agreement. (Capitalization altered.)

10

explanation of the factors and reasoning supporting its decision. The Circuit Court's oral explanation of its ruling, in conjunction with the record, is sufficient to enable meaningful appellate review of the issues raised by Mac Master. Accordingly, the Circuit Court did not abuse its discretion in denying Mac Master's request for findings of facts and conclusions of law supporting the Order.

Therefore, IT IS HEREBY ORDERED that the November 7, 2017 "Order Granting In Part And Denying In Part . . . *Mac Master's Motion to Enforce Attorney's Lien* Filed September 8, 2017," entered in the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, July 29, 2021.


On the briefs:

Timothy I. Mac Master,
Real Party in Interest-
Appellant.

James J. Bickerton and
Nathan P. Roehrig
(Bickerton Dang, LLLP)
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge