972 P.2d 295

Kevin A. CANALEZ, Plaintiff–Appellant,

v.

BOB'S APPLIANCE SERVICE CENTER, INC.; and Elanie Hinokuma, Defendants–Appellees, and Gregory T. Grab, Party–In–Interest–Appellant.

No. 21548.

Supreme Court of Hawai'i.

Feb. 2, 1999.

As Clarified on Denial of Reconsideration Feb. 22, 1999.

Gregory T. Grab, on the briefs, for plaintiff-appellant.

Kevin A. Canalez, on the briefs and as Party–In–Interest–Appellant.

Jeffrey H.K. Sia and Stephen G. Dyer (of Ayabe, Chong, Nishimoto, Sia & Nakamura) on the briefs, for defendants-appellants.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

This appeal arises out of a personal injury lawsuit in which plaintiff Kevin A. Canalez unsuccessfully sued defendants Bob's Appliance Service Center, Inc. (Bob's Appliance) and Elanie Hinokuma (collectively, Defendants or Appellees) following an automobile-bicycle collision in which Canalez was injured. Canalez and Canalez's attorney, Gregory T. Grab, (collectively, Appellants) appeal from the first circuit court's (1) April 16, 1998 order granting in part Defendants' motion for attorney's fees and sanctions; and

(2) April 16, 1998 order granting Defendants' motion for costs. With respect to attorney's fees and sanctions, the circuit court specifically awarded Defendants attorney's fees in the amount of $19,567.25 pursuant to Hawai'i Revised Statutes (HRS) § 607–14.5 (1993). Finding that Grab had violated Hawai'i Rules of Civil Procedure (HRCP) Rule 11 as well as Hawai'i Circuit Court Rules (HCCR) Rule 12.1, the circuit court further ordered that Grab and Canalez should be personally liable for one-half each of the $19,567.25 attorney's fee award. As for costs, the circuit court awarded Defendants costs in the amount of $5,310.98 based on HRCP Rule 68.

Appellants contend that the circuit court erred by (1) granting attorney's fees under HRS § 607–14.5, (2) finding that sanctions were warranted based on Grab's violation of HRCP Rule 11 and pursuant to HCCR Rule 12.1, and (3) granting Appellants' motion for costs in its entirety. For the reasons stated below, we affirm the circuit court's orders.

## I. BACKGROUND

On April 29, 1993, Canalez was riding his bicycle on Ke'eaumoku Street, in the City and County of Honolulu, when he ran into a van driven by Hinokuma, who was in the course and scope of her employment with Bob's Appliance. Severely injured, Canalez was taken by ambulance to Queen's Medical Center.

Upon arriving at the emergency room at Queen's Medical Center, Canalez was treated by Wiley Brunel, M.D. (Dr. Brunel), a trauma surgeon, who observed that Canalez suffered from multiple injuries, including blunt head trauma, a comminuted mandible fracture, multiple broken teeth, facial lacerations, and other injuries. Because Canalez could not remember the accident and asked repetitive questions, Dr. Brunel believed Canalez was "amnestic for the event." During the course of questioning Canalez about his medical history, Dr. Brunel learned from Canalez that he used marijuana. A urinalysis conducted at the hospital indicated that Canalez was "presumptive positive" for "THC," one of the compounds found in marijuana.

Bruce Y. Todoki, D.D.S. (Dr. Todoki), a dentist and oral/maxillofacial surgeon, also treated Canalez while he was in the emergency room at Queen's Medical Center. Dr. Todoki observed that Canalez had suffered a "severely fractured lower jaw, some missing teeth or fractured teeth." The fracture sustained by Canalez went "completely through the jaw."

Canalez was released from Queen's Medical Center two days after the accident, on May 1, 1993. It is undisputed that Canalez's medical bills for his stay at Queen's Medical Center were in excess of $20,000.00. On May 10, 1993, Canalez initiated the underlying suit, filing a complaint against Defendants in first circuit court. Canalez's complaint alleged, in pertinent part, that Hinokuma's negligence had caused the collision and that Canalez had thereby "suffered and continue[d] to suffer severe personal injuries and damages, including hospital and medical expenses, loss of earnings and earning capacity, pain and suffering, property damage, loss of enjoyment of life, emotional distress, and ... was otherwise injured and damaged."

Concurrently, Canalez requested that the court exempt the case from the Court Annexed Arbitration Program (CAAP) on the ground that "the probable jury award value, after any reduction on the liability issues and exclusive of interest and costs, is in excess of $150,000.00...." Pursuant to Hawai'i Arbitration Rules (HAR) Rule 6(A) (1987), only "tort cases having a probable jury award value, not reduced by the issue of liability and not in excess of [$150,000.00], exclusive of interest and costs, may be accepted into the [CAAP]...."

In support of his request to exempt the case from the CAAP, Grab represented to the court that:

This case involves severe head injuries. [Canalez] is a fully employed 27 year old male who was struck by a delivery van while riding his bicycle. He was in a coma for approximately 2 days at Queen's Hospital. He has lost a large portion of his jaw bone, lost numerous teeth, and sustained severe lacerations to his head and face.

[Canalez] is expected to undergo future reconstructive surgery to replace missing portions of his jaw bone with parts of his hip bone, and extensive dental work. His Queen's Hospital medical expenses exceed $16,000.00.

Therefore, if the Defendant(s) are found liable for his injuries, damages to [Canalez] will likely exceed the threshold amount as defined in Rule 6(a) of the [HAR].

Based on this request, the Arbitration Administrator ruled on May 12, 1993, that Canalez's case would not be admitted into the CAAP. Trial was scheduled for the week of November 21, 1994.

In order to verify the extent of Canalez's alleged injuries and to evaluate the case, Defendants initiated standard preliminary discovery by serving Grab, on June 18, 1993, with their first request for production of documents. Responses were due on July 18, 1993, but Grab did not respond.

On September 7, 1993, Defendants served Grab with their first request for answers to interrogatories; again, Grab failed to respond. After several unanswered phone calls to Grab, Defendants, on October 12, 1993, sent a letter to Grab asking for a written response to both the first request for production of documents as well as the first request for answers to interrogatories. Grab did not respond. On December 13, 1993, Defendants sent another letter to Grab, reminding Grab that they had still not received his answers to interrogatories.[1]

Notwithstanding his own failure to comply with Defendants' requests for discovery, Grab, on January 26, 1994, sent a letter to Defendants formally demanding that Defendants pay the policy limits in the case, to wit, $100,000.00. Grab's letter stated in pertinent part:

Enclosed herewith please find a copy of the report of [Canalez's] treating surgeon, Dr. Bruce Y. Todoki, D.D.S., dated January 10, 1994 for your review.

We hereby formally demand the policy limits in this matter, which you have repre-

sented to be $100,000.00. This offer of compromise is open until Friday, February 25, 1994 at the close of business, at which time it will be withdrawn.

During the next month feel free to complete any investigation you deem necessary, including an Independent Medical Examination of [Canalez's] injuries.

... [R]egretably this is a one-time only offer. We believe that the reasonable compensation to [Canalez] would range in excess of $250,000.00 given the extent and permanency of his injuries. A settlement, of course, would avoid any personal liability exposure on behalf of [Hinokuma] and the business assets.

Through a letter dated February 2, 1994, Defendants informed Grab that, in addition to an independent medical examination, they could not evaluate the settlement demand without Grab's answers to interrogatories and depositions of Canalez and Dr. Todoki. On February 10, 1994, Grab produced some answers to Defendants' interrogatory request, but failed to provide, *inter alia,* the names of doctors and hospitals providing medical treatment for his alleged injuries, as well as the amount of his medical expenses incurred as a result of the accident.

Via a letter dated February 18, 1994, Defendants informed Grab of the above deficiencies and informally requested supplementation of his answers. Defendants also requested that Grab extend his settlement demand deadline for at least another sixty days. On February 22, 1994, Grab sent a letter to Defendants, declaring that all medical records and bills had been produced and declining to extend the February 25, 1994 settlement demand deadline.

On March 18, 1994, Defendants moved to compel Grab to answer Defendants' first request for production of documents and first request for answers to interrogatories. A hearing on the matter was set for April 13, 1994. One day prior to the hearing, however, Grab responded with sufficient information, prompting Defendants to withdraw

---

1. Although Defendants' December 13, 1993 letter refers only to the delinquent answers to interrogatories, we note that the record reflects that Defendants also had not received any response to their request for production of documents.

their motion to compel on the day of the hearing.

On May 20, 1994, Canalez failed to timely appear for his independent medical examination (IME) with Alan K.K. Sue, D.D.S. (Dr. Sue). Canalez's IME had to be rescheduled and was conducted by Dr. Sue on June 1, 1994. On July 30, 1994, Dr. Sue submitted his IME report to Defendants.

Within three weeks of investigating Canalez's claim, Defendants, by letters addressed to Grab dated August 16, 1994 and September 23, 1994, offered three proposals for structured settlement. Each of the proposals was based on the full amount of the available policy limit under the business automobile policy at issue. Under one of the proposals, Canalez's ultimate recovery could have exceeded $244,000.00. Defendants informed Grab in their September 23, 1994 letter that the structured settlement proposals would expire on October 2, 1994. Grab did not respond to either of Defendants' letters.

However, on October 14, 1994, three days prior to the first mandatory settlement conference scheduled before the Honorable Melvin Soong, Grab sent Defendants a letter which stated in its entirety: "Please be advised that [Canalez] has authorized us to settle the above-referenced matter for $500,000.00." No explanation was provided for the increase in Appellants' settlement demand.

During the settlement conference before Judge Soong, Defendants reiterated an offer to pay the $100,000.00 policy limit under their insurance policy in settlement of Canalez's complaint. Grab rejected the offer, alleging "bad faith" against the insurer and arguing that Defendants had personal assets from which Canalez could seek an excess judgment. Defendants retorted that a bad faith claim was not viable and that they did not have any personal assets from which Canalez could collect should the judgment exceed $100,000.00.

On October 24, 1994, Defendants tendered an offer of judgment in the amount of $100,000.00 pursuant to HRCP Rule 68. Canalez did not accept Defendants' offer.

A second and final settlement conference was held before Judge Soong on November 2, 1994. Per Judge Soong's request, both Grab and Canalez were present at this conference. Again, notwithstanding Defendants' repeated assertion that they had no assets upon which to execute a judgment in excess of the $100,000.00 policy limit, Appellants refused to settle the case for $100,000.00. As such, Judge Soong cautioned Appellants that he would consider sanctions in the event that Canalez did not obtain a judgment in excess of $100,000.00.

On November 10, 1994, Defendants moved to disqualify Grab from representing Canalez on the ground that Grab, who formerly represented Hinokuma in an unrelated matter, possessed confidential information regarding Hinokuma's assets. Alleging that Grab had indicated to Defendants during the second settlement conference that he may possess such confidential information, Defendants argued, in pertinent part:

> It is only logical that [Grab's] refusal to settle for the full policy limits arguably must be based on certain confidential financial/economic information [Grab] obtained from [Hinokuma] while he was representing her, otherwise, it defies logic and reason for a plaintiff to refuse a policy limits settlement offer, **unless** Mr. Grab believes he has information concerning [Hinokuma's] financial state from which he further believes an excess judgment could be satisfied in whole or in part. . . .

(Bold and emphasis in original.) Following an expedited hearing on the matter on November 16, 1994, the circuit court denied Defendants' motion.

A seven-day jury trial commenced on November 25, 1994, during which time Canalez presented the testimony of several witnesses, including Drs. Brunel and Todoki. At the close of Canalez's case-in-chief, Defendants rested without presenting any evidence, except for their cross-examination of Canalez's witnesses. We note that, in their cross-examination of Canalez's witnesses, Defendants focused heavily on the issue of Canalez's use of marijuana. Additionally, Dr. Brunel was permitted to testify regarding the result of Canalez's urinalysis.

On December 16, 1994, the jury, in its special verdict, found Canalez 80% negligent and Hinokuma 20% negligent. The jury also assessed Canalez's damages at $35,000.00 in special damages and $26,000.00 in general damages. However, inasmuch as Canalez's negligence exceeded Defendant's negligence, the circuit court entered judgment in favor of Defendants on February 27, 1995.

On March 6, 1995, Defendants filed their motion for $5,310.98 in costs pursuant to HRCP Rule 68. Concurrently, Defendants filed their motion for attorney's fees and sanctions, requesting attorney's fees in the amount of $33,000.00 and sanctions. Defendants claimed that attorney's fees and sanctions were warranted because Appellants had, *inter alia,* made untrue and/or inaccurate statements in the pleadings, brought a frivolous claim, and failed to negotiate in good faith. As for Defendants' contention that Appellants had made untrue and/or inaccurate statements in the pleadings, Defendants specifically alleged that Appellants had falsely averred in their motion to exempt the case from the CAAP that Canalez "was in a coma for approximately two days at Queen's Medical Center," "lost a large portion of his jaw bone," and was "expected to undergo future reconstructive surgery to replace missing portions of his jaw bone with parts of his hip bone[.]" Claiming that Appellants had misled the CAAP administrator into exempting the case from arbitration, Defendants requested that the court impose HRCP Rule 11 sanctions, including attorney's fees and costs.

With respect to the issue of frivolousness, Defendants again cited to the fact that Appellants had misled the CAAP administrator by making false statements in their motion to exempt the case from the CAAP. Additionally, Defendants pointed out that Appellants had refused to comply with "reasonable, basic discovery requests for approximately ten (10) months, responding only in the face of a Motion to Compel." Based on the foregoing, Defendants claimed that "[Grab] [had] handled [Canalez's] claim in a frivolous manner from the outset." Defendants further argued that, "especially when seen in light of [Grab's] pattern of deception and recalci-

trance, [Appellants'] not settling for the $100,000.00 policy limit once it was offered made continuation of the case, and going to trial, completely frivolous." As such, Defendants requested attorney's fees pursuant to HRS § 607-14.5.

Finally, in support of their contention that Appellants had failed to negotiate in good faith, Defendants pointed to the fact that Appellants had failed to respond to their offers of structured settlement "until [Appellants'] two-line October 14, 1994 letter demanding $500,000.00." Moreover, Appellants had "provided no new evidence or bona fide explanation" to account for their "sudden five-fold increase in demand." "Despite several telephone calls from Defendants, [Grab] refused to discuss settlement." Insofar as the record clearly evinced that Appellants had not "discussed and attempted to negotiate a settlement through an exchange of written bona fide and reasonable offers to [sic] settlement prior to the [settlement] conference," in violation of HCCR Rule 12.1(a)(4), Defendants urged the court to impose sanctions under the authority of HCCR Rule 12.1(a)(6).

On March 9, 1995, Canalez moved for a new trial, which was denied. On April 24, 1995, Canalez timely appealed the judgment (first appeal).

Defendants' motions for costs pursuant to HRCP Rule 68 and for attorney's fees and sanctions came on for hearing on March 14, 1995. At the close of the hearing, the circuit court requested that Defendants submit the amount of attorney's fees incurred after October 17, 1994, the date of the first settlement conference. On March 30, 1995, counsel for Defendants submitted a supplemental memorandum in support of their motion for attorney's fees, indicating that, from October 17, 1994 through December 16, 1994 (the final day of trial), they had incurred $39,134.50.

On May 30, 1995, the circuit court, Judge Soong presiding, entered orders (1) granting in part Defendants' motion for attorney's fees and sanctions and (2) granting Defendants' motion for costs, pursuant to HRCP Rule 68. The former order provided in pertinent part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that [Defendants'] Motion for Attorney's Fees and Sanctions is granted in part, insofar as the Defendants are awarded $19,567.25 in attorney's fees, pursuant to § 607–14.5 of the Hawaii Revised Statutes.

The Court finds and concludes that Mr. Grab violated Rule 11, Hawaii Rules of Civil Procedure (HRCP), and Rule 12.1, Hawaii Circuit Court Rules, insofar as:

A. Mr. Grab made an untrue and/or inaccurate statement in Plaintiff's Motion to Exclude the above-entitled case from the [CAAP];

B. [Canalez's] complaint was frivolous inasmuch as Mr. Grab made untrue and/or inaccurate statements regarding the nature and extent of [Canalez's] injuries; and

C. Mr. Grab failed to negotiate in good faith during the settlement conference, such that the Defendants tendered their policy limits and advised Mr. Grab and his client (Plaintiff) that there was no "excess coverage" or other available assets.

The Court further orders that Mr. Grab and Mr. Canalez shall be personally liable for one-half each of the $19,567.25 attorney's fee award. In sum, Mr. Grab shall pay $9,783.63 and Mr. Canalez shall pay $9,783.63 to the Defendants.

Canalez timely appealed these orders (second appeal).

On December 18, 1995, this court, disposing of Canalez's second appeal, vacated the May 30, 1995 orders on the ground that "the circuit court was without jurisdiction to enter the orders after the April 24, 1995 notice of appeal was filed[.]" Approximately ten months later on October 2, 1996, this court disposed of Canalez's first appeal, affirming the underlying judgment. *See Canalez v. Bob's Appliance Service Center, Inc.*, No. 18934, 83 Hawai'i 408, 927 P.2d 416 (Oct. 2, 1996) (mem) [hereinafter, *Canalez I* ]. We note that, in *Canalez I*, which affirmed the underlying judgment herein, this court held, *inter alia*, that the result of Canalez's drug screen was relevant and material to: (1) whether Canalez operated his bicycle while under the influence of marijuana; and (2) whether Canalez was therefore negligent. *See Canalez I*, mem. op. at 11. In addressing whether the prejudicial effect of Canalez's marijuana use outweighed its probative value, this court detailed the evidence regarding the circumstances of the accident, stating that the evidence "suggest[ed] that Canalez may not have been operating his bicycle with due care at the time of the accident." *Id.* at 13. As such, this court concluded that the evidence of Canalez's marijuana use had been properly admitted by the circuit court. *Id.* at 14.

Finally, on January 9, 1998, Defendants moved for entry of the orders (1) granting in part Defendants' motion for attorney's fees and sanctions and (2) granting Defendants' motion for costs, pursuant to HRCP Rule 68. On April 16, 1998, following a hearing, the circuit court, the Honorable Kevin S.C. Chang presiding, granted Defendants' motion and entered the foregoing orders. These orders, signed and entered by Judge Chang, were identical to the orders originally entered by Judge Soong on May 30, 1995.

Appellants timely appealed from the circuit court's April 16, 1998 orders.

## II. *STANDARDS OF REVIEW*

### A. *Attorney's Fees*

This court reviews the circuit court's denial and granting of attorney's fees under the abuse of discretion standard. *Eastman v. McGowan,* 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (citation omitted); *Coll v. McCarthy,* 72 Haw. 20, 28, 804 P.2d 881, 887 (1991). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Lepere v. United Public Workers,* 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995) (citation, internal quotation marks, and brackets omitted). Stated differently, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State ex rel. Bronster v. United States Steel*

*Corp.*, 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996).

### B. *Sanctions*

■ "All aspects of a HRCP Rule 11 determination should be reviewed under the abuse of discretion standard." *Lepere*, 77 Hawai'i at 473, 887 P.2d at 1031. Similarly, inasmuch as the circuit court has discretion to grant sanctions under HCCR Rule 12.1(a)(6), this court also reviews an award of HCCR Rule 12.1 sanctions under the abuse of discretion standard.

### C. *Costs*

■ "Generally, taxation of costs is within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Eastman*, 86 Hawai'i at 27, 946 P.2d at 1323.

### III. *DISCUSSION*

#### A. The Propriety of the Circuit Court's Award of Attorney's Fees Under HRS § 607–14.5

Pursuant to HRS § 607–14.5(a) (1993),

[i]n any civil action ... where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, and enter as part of its order[ ] ... a reasonable sum for attorneys' fees, in an amount to be determined by the court upon a specific finding that the party's claim ... was frivolous.

■ Moreover, a circuit court must "find in writing that all claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action." HRS § 607–14.5(b). "[F]or an assignment of error to be frivolous it must be manifestly and palpably without merit." *Coll v. McCarthy*, 72 Haw. at 29, 804 P.2d at 887 (citation and internal quotation marks omitted). A frivolous claim has been defined as "a claim so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required." *Id.* (citation, internal quotation marks, and brackets omitted).

Appellants contend that the claims presented by Canalez "cannot reasonably be held to be frivolous[,]" arguing that:

First, this case was not frivolous because it is undisputed that CANALEZ sustained serious and permanent injuries as the result of the collision. Second, the defense moved for a directed verdict at the close of Plaintiff's case-in-chief which was denied by the trial court. Had the matter been frivolous, the trial court would have so ruled at that juncture. Third, the jury, by way of special verdict form, found that HINOKUMA was twenty percent liable for the injuries and damages sustained by CANALEZ and assessed his special damages to be $35,000.00 and his general damages to be $26,000.00. Thus, not only did the jury find liability on the part of HINOKUMA, the jury found CANALEZ had sustained substantial damages. . . .

(Citations omitted.)

■ Appellants' points are well taken. As previously indicated, the circuit court determined that Canalez's claim against Defendants was frivolous based solely on the fact that Grab made "untrue and/or inaccurate statements regarding the nature and extent of [Canalez's] injuries." However, assuming that Grab made such untrue and/or inaccurate statements, this fact does not, in and of itself, demonstrate that Canalez's claim against Defendants was "manifestly and palpably without merit." It is undisputed that Canalez was injured as a result of the accident; Canalez's medical bills alone for his two-day stay at Queen's Medical Center were in excess of $20,000.00. Thus, notwithstanding that Grab may have made untrue and/or inaccurate statements regarding the nature and extent of Canalez's injuries, the question whether Hinokuma's negligence caused the accident still remained unresolved. Inasmuch as the record does not support the circuit court's conclusion that Canalez's claim against Defendants was frivolous, "so as to indicate bad faith on the pleader's part such that argument to the court was not required," we hold that the circuit court abused its discretion in granting attorney's fees pursuant to HRS § 607–14.5.

B. *The Propriety of Sanctions Under HRCP Rule 11 and HCCR Rule 12.1*

 Notwithstanding the fact that the circuit court's assessment of sanctions was based, in part, on the improper award of attorney's fees pursuant to HRS § 607–14.5, as discussed above, "an appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance." *Gold v. Harrison*, 88 Hawai'i 94, 103 n. 7, 962 P.2d 353, 362 n. 7 (1998); *see also Enos v. Pacific Transfer & Warehouse, Inc.*, 79 Hawai'i 452, 459, 903 P.2d 1273, 1280, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995). Both HRCP Rule 11 and HCCR Rule 12.1 authorize a circuit court to order, as sanctions, reasonable expenses and attorney's fees following a violation of either rule. *See* HRCP Rule 11; HCCR Rule 12.1(a)(6). Appellants, however, assert that the circuit court erred in determining that Grab had violated HRCP Rule 11 and that sanctions based on HCCR 12.1(a)(6) were not authorized.

1. *HRCP Rule 11 sanctions*

HRCP Rule 11 (1995) provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; *that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

(Emphases added.)

Furthermore,

> [i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.* (emphasis added).

 In *Enos*, this court stressed

> that, in order to facilitate a meaningful and more efficient appellate review, an order imposing sanctions should set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority (*e.g.*, HRCP Rule 11 or the court's inherent power). *See, e.g., In re Yagman*, 796 F.2d 1165, 1184 (sanction award should be quantifiable with some precision and should be properly itemized in terms of the perceived misconduct and the sanctioning authority, because different rules, regulations, and statutes provide sanctions for different forms of misconduct), *opinion amended and reh'g denied*, 803 F.2d 1085 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.E.2d 390 (1987). For purposes of appellate review, a distinction must be made between "zealous advocacy and plain pettifoggery[.]" [*United States v. International Bhd. of] Teamsters*, 948 F.2d [1338,] 1344 [ (2d Cir.1991) ].

79 Hawai'i at 459, 903 P.2d at 1280. However, where a sanction order does not contain specific findings, we are compelled to review the entire record for an abuse of discretion. *See id.*

In the case at bar, the circuit court found that Grab had violated both HRCP Rule 11 and HCCR Rule 12.1 based generally upon three grounds: (1) Grab's untrue and/or inaccurate statement in his motion to exclude the case from the CAAP [hereinafter, motion to exclude]; (2) the frivolousness of Canalez's complaint; and (3) Grab's failure to negotiate in good faith during the settlement conference. It is evident from a reading of HRCP Rule 11, whose cornerstone is the certification requirement, *see Enos*, 79 Hawai'i at 456, 903 P.2d at 1277, that the first ground clearly falls within the purview of this rule. We note that, inasmuch as a frivolous complaint could be deemed to have been filed for an "improper purpose," in violation of HRCP Rule 11, the second ground arguably falls

within the scope of HRCP Rule 11 as well. However, as discussed previously, *see supra* Section III.A, the circuit court erroneously held that Canalez's complaint was frivolous based on the fact that Grab "made untrue and/or inaccurate statements regarding the nature and extend of [Canalez's] injuries." We note further that the third ground deals with Grab's alleged violation of HCCR Rule 12.1 and is discussed *infra* Section III.B.2.

Insofar as only the first ground falls within the purview of HRCP Rule 11, our present inquiry is limited to the question whether the circuit court's assessment of HRCP Rule 11 sanctions can be sustained based on Grab's untrue and/or inaccurate statement made in the motion to exclude. The circuit court's order fails to state with *any* specificity the perceived untrue and/or inaccurate statement made by Grab in the motion to exclude. According to Defendants, Grab made an untrue and/or inaccurate statement when he represented in the motion to exclude that Canalez "was in a coma for approximately 2 days." Defendants further contend that Grab falsely stated in his motion to exclude that Canalez had "lost a large portion of his jaw bone." Appellants, on the other hand, argue that neither of these statements is untrue or inaccurate.

Defendants are correct that Grab made an untrue and/or inaccurate statement when he represented that Canalez "was in a coma for approximately 2 days." None of the physicians who treated Canalez at Queen's Medical Center—to wit, Dr. Brunel and Dr. Todoki—diagnosed Canalez as comatose after the accident. Rather, Dr. Brunel testified that Canalez was amnestic for the event and that he was confused and asking repetitive questions.[2]

Still, Appellants reason that, inasmuch as Grab is not a physician,

his "diagnosis" of the mental state of CAN-ALEZ was neither untrue nor inaccurate: "Coma" is defined in *Webster's Ninth Collegiate Dictionary* as '(1): a state of profound unconsciousness caused by disease, injury, or poison (2): *a state of mental or physical sluggishness*'.

(Emphasis in original.) Considering that Dr. Brunel stated that Canalez was amnestic and confused, and Canalez himself stated he could not recall the collision, Appellants claim that the circuit court's assessment of the evidence was clearly erroneous. This argument is specious.

HRCP Rule 11 provides that a party must conduct a "reasonable inquiry" to assure that all pleadings and motions are "well grounded in fact and [are] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law[.]" *See Lepere*, 77 Hawai'i at 474, 887 P.2d at 1032. Additionally, the pleadings and motions must "not be interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." HRCP Rule 11; *see id.* Thus, an attorney's subjective good faith does not provide a cloak of protection from HRCP Rule 11 sanctions. *See id.*

 Prior to submitting his request for exemption from the CAAP, the record evinces that Grab discussed Canalez's condition with Canalez and a friend of Canalez who was present at Queen's Medical Center on the day of the accident. Based on his conversations with Canalez and Canalez's friend, Grab believed that Canalez "had been out cold most of the time." Grab did not, however, inquire of any physician as to the nature of Canalez's condition. As such, the circuit court was entitled to believe that Grab had failed to conduct a reasonable inquiry to

---

**2.** As for Appellants' statement that Canalez had "lost a large portion of his jaw bone," we note that, contrary to Defendants' assertion, the record evinces that such statement was not inaccurate. As previously indicated, Dr. Todoki testified that Canalez had suffered a "severely fractured lower jaw, some missing teeth or fractured teeth." Dr. Todoki further testified that, in order for Canalez to have new teeth implanted, he would require a bone graft because "there may not be sufficient bone to ac-

commodate the implant." Lonnie Tiner, D.D.S. (Dr. Tiner), a board certified oral maxillofacial surgeon who examined Canalez after the accident, also testified in pertinent part that Canalez was "significantly missing some teeth" as well as "some of his alveolar processor bone[.]" Dr. Tiner stated that future medical treatment would entail restoring the missing bone area "prosthetically with plastic or . . . with a bone graft."

assure that his statement regarding Canalez's "coma" was well grounded in fact. The circuit court did not, therefore, err in determining that Grab made a false and/or inaccurate statement in the motion to exempt, in violation of HRCP Rule 11.

However, the question whether this court can affirm sanctions in the form of attorney's fees for Grab's violation of HRCP Rule 11 presents us with a separate problem. When a pleading, motion or other paper is signed in violation of HRCP Rule 11, "the court[ ] ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred *because* of the filing of the pleading, motion, or other paper, including reasonable attorney's fee." HRCP Rule 11 (emphasis added). As stated in the advisory committee notes to the federal counterpart to HRCP Rule 11, Federal Rule of Civil Procedure (FRCP) Rule 11 (1998), "the purpose of Rule 11 sanctions is to deter rather than to compensate[.]" Thus, in the event that attorney's fees and expenses are awarded to another party as sanctions, they *"should not exceed the expenses and attorneys' fees for the services* **directly and unavoidably** *caused by the violation of the certification requirement."* FRCP Rule 11 advisory committee's note (emphasis and bold added).

In the motion to exclude, Grab indicated that, if Defendants were found to be liable for Canalez's injuries, Canalez's damages would likely exceed the $150,000.00 CAAP threshold. Grab cited the following reasons to substantiate his motion to exclude: (1) that Canalez was a fully employed male; (2) that Canalez was in a coma for two days; (3) that Canalez lost a large portion of his jaw bone, lost numerous teeth, and sustained severe lacerations to his head and face; (4) that Canalez was expected to undergo future reconstructive surgery; and (5) that his hospital medical expenses exceeded $16,000.00.

Notwithstanding that Grab falsely and/or inaccurately stated that Canalez was in a coma for two days, there is, nonetheless, insufficient evidence for us to conclude that the attorney's fees incurred by Defendants

were "directly and unavoidably" caused by Grab's false and/or inaccurate statement. As indicated previously, the motion to exclude was based on several factors, not just on Grab's representation that Canalez had suffered a coma. Additionally, the Arbitration Administrator's decision granting the motion to exclude states simply that:

> The Arbitration Administrator has reviewed the Request for Exemption for the above case from the [CAAP] on May 11, 1993.

> It is the Arbitration Administrator's Decision that the above request is hereby granted and the above-entitled matter shall *not* be admitted into the [CAAP].

The precise grounds upon which the Arbitration Administrator based his decision to exempt the case from the CAAP are, therefore, unknown. Inasmuch as the record does not show that, absent Grab's untrue and/or inaccurate statement, the case would have otherwise been admitted into the CAAP, we are unable to hold that the attorney's fees incurred by Defendants as a result of proceeding through to trial were "directly and unavoidably" caused by Grab's violation of the certification requirement. Accordingly, we cannot sustain the trial court's imposition of sanctions under HRCP Rule 11.

### 2. *HCCR Rule 12.1 sanctions*

The circuit court concluded that Grab had violated HCCR Rule 12.1 on the ground that "[Grab] failed to negotiate in good faith during the settlement conference, such that the Defendants tendered their policy limits and advised [Grab] and his client (Plaintiff) that there was no 'excess coverage' or other available assets."

Contending that settlement negotiations cannot form a basis for sanctions, Appellants argue that:

> GRAB denied the tendered policy of $100,000.00 because that was his client's decision. Good faith does not require that an attorney must give up his client's claim. Although the defense claimed there was not excess coverage, it is undisputed that the Defendants had assets which could have been used to fairly compensate CAN

ALEZ for his severe and permanent injuries. "Fair and adequate compensation" is not determined by the amount of applicable insurance policy.

Assuming arguendo that GRAB failed to negotiate in good faith, there is no authority [sic] support such a sanction based on negotiations during settlement conferences.

Therefore, the court erred as a matter of law when it so found and the order allowing attorney's fees and sanctions should be vacated.

We disagree. HCCR Rule 12.1 (1991) states in relevant part:

**CIVIL SETTLEMENT CONFERENCE; SETTLEMENT CONFERENCE STATEMENT.**

**(a) Settlement Conference.**... A settlement conference in civil cases shall be subject to the following guidelines:

....

(4) Each party to the action shall have thoroughly evaluated the case and shall have discussed and attempted to negotiate a settlement through an exchange of **written bona fide and reasonable offers of settlement** prior to the conference;

....

(6) *Sanctions.* The failure of a party or his attorney to appear at a scheduled settlement conference, the neglect of a party or his attorney to discuss or attempt to negotiate a settlement prior to the conference, or the failure of a party to have a person authorized to settle the case present at the conference shall, unless a good cause for such failure or neglect is shown, be deemed an undue interference with orderly procedures. As sanctions, the court may, in its discretion:

....

(ii) Order a party to pay the opposing party's reasonable expenses and attorneys' fees;

(iv) Impose any other sanction as may be appropriate.

(Underscoring and some bold emphases added.) (Some bold emphases in original.)

The apparent purpose of requiring each party to thoroughly evaluate the case and to discuss and attempt to negotiate a settlement prior to settlement conference is to ensure that the dispute resolution opportunity generated by the settlement conference mechanism is meaningful. As such, a failure to abide by the requirements of HCCR Rule 12.1(a)(4), absent good cause shown, is sanctionable under HCCR Rule 12.1(a)(6), as "an undue interference with orderly procedures." Technically, a party's bad faith conduct during a settlement conference is not sanctionable pursuant to HCCR Rule 12.1(a)(6). However, if a party fails without good cause to abide by the pre-conference mandate of HCCR Rule 12.1(a)(4), it logically follows that such bad faith conduct will carry over into the settlement conference so as to impede meaningful negotiations. It is apparent to us that HCCR Rule 12.1(a)(6) was intended to encompass a party's bad faith conduct during a settlement conference under the circumstances presented here.

Regardless, the record in the case at bar plainly evinces that HCCR Rule 12.1 sanctions were warranted based solely on Appellants' bad faith conduct prior to settlement conference. Specifically, the record is replete with acts demonstrating that Appellants failed to thoroughly evaluate the case or to discuss or attempt to negotiate a settlement "through an exchange of *written bona fide* **and** *reasonable offers of settlement* prior to the conference," as required by HCCR Rule 12.1(a)(4) (emphasis and bold added).

First, although Appellants demanded on January 26, 1994 that Defendants pay the $100,000.00 policy limits, Appellants made this "offer of compromise" without providing the discovery requested, effectively preventing Defendants from evaluating their settlement demand. Even after Defendants informed Appellants that they could not evaluate the settlement demand without answers to interrogatories, depositions of Canalez and Dr. Todoki, and possibly an IME, Appellants still refused to provide Defendants with the requested adequate discovery, including, *inter alia,* the names of doctors and hospitals providing medical treatment for Canalez's alleged injuries, as

well as the amount of Canalez's medical expenses incurred as a result of the accident. Indeed, only after Defendants filed their March 18, 1994 motion to compel Appellants to answer the first request for production of documents and the first request for answers to interrogatories did Appellants belatedly respond in an adequate manner to the discovery requests. By this time, Appellants' February 25, 1994 settlement demand deadline—which Appellants outright refused to extend notwithstanding their own failure to provide Defendants with the requested discovery—had long expired. Based on the foregoing, Appellants' first settlement demand cannot possibly be construed as a "written bona fide and reasonable offer[ ] of settlement" under HCCR Rule 12.1(a)(4).

Second, although Defendants, upon finally being able to investigate Canalez's claim, offered three proposals for structured settlement, each of which was based on the full amount of the available policy limit, Appellants failed to respond to either of Defendants' proposal letters. Instead, three days prior to the first settlement conference, Appellants informed Defendants that they would now settle the case for five times the amount of the first settlement demand, or $500,000.00, without any explanation of the $400,000.00 increase in their settlement demand. Indeed, the record contains no evidence regarding Canalez's injuries sufficient to demonstrate, by any measure, that a 400% increase in demand was warranted or in good faith supported. Based on these facts and circumstances, Appellants' second, wholly unsupported settlement demand also fails to qualify as a "written bona fide and *reasonable* offer[ ] of settlement," pursuant to HCCR Rule 12.1(a)(4) (emphasis added).

Finally, as for Appellants' failure to thoroughly evaluate the case, Appellants' conduct at settlement conference speaks for itself. The record indicates that, during both settlement conferences, Appellants steadfastly refused to settle for Defendants' $100,000.00 policy limit, clinging to their belief that Defendants had personal assets upon which to execute an excess judgment. Absent from the record, however, is any evidence demonstrating that Appellants ever attempted to substantiate, during the settlement conference or otherwise, that the case had increased in worth from $100,000.00 to $500,-000.00. Indeed, Appellants apparently do not dispute that the evidence had not changed from the time Appellants initially demanded the $100,000.00 policy limit to the time Appellants submitted their $500,000.00 demand. In light of the evidence adduced at trial, including compelling evidence of Canalez's own negligence, it is painfully apparent that Appellants failed to thoroughly evaluate the case, particularly with respect to liability, prior to the settlement conference. As previously indicated, the jury heard evidence regarding Canalez's use of marijuana, including, *inter alia,* the fact that Canalez tested presumptively positive for THC on the day of the accident. Holding in *Canalez I* that the circuit court correctly admitted the evidence regarding Canalez's marijuana use, this court noted that a reasonable jury could have inferred from the circumstances surrounding the accident that Canalez's "marijuana use was sufficient to impair his capacity to perceive the dangers with the clarity, make the decisions with the prudence, and operate the bicycle with the skill and caution required by law." *Canalez I,* mem. op. at 14 (brackets, ellipses, citation, and internal quotation marks omitted). Clearly, Appellants failed to pay any regard to evidence of Canalez's own negligence in "evaluating" their case.

As previously stated, it is well settled that this court "may affirm a judgment of the lower court on any ground in the record that supports affirmance." *Gold,* 88 Hawai'i at 103 n. 7, 962 P.2d at 362 n. 7; *Enos,* 79 Hawai'i at 459, 903 P.2d at 1280. Moreover, although HCCR Rule 12.1(a)(6)(ii) specifies only that *a party* can be ordered to pay the opposing party's reasonable expenses and attorney's fees, HCCR Rule 12.1(a)(6)(iv) expressly authorizes the court to "[i]mpose any sanction as may be appropriate." Insofar as the record unequivocally demonstrates that Appellants—to wit: Grab *and* Canalez—failed to thoroughly evaluate the case or to discuss or even attempt to negotiate, in good faith, a settlement prior to settlement conference, in violation of HCCR Rule 12.1(a)(6), we affirm the circuit court's sanctions, includ-

ing attorney's fees, based on HCCR Rule 12.1.

## C. The Propriety of Costs Under HRCP Rule 68

■ We note at the outset that

> HRCP Rule 68 is identical to Federal Rules of Civil Procedure (FRCP) Rule 68. Where a Hawai'i rule of civil procedure is identical to the federal rule, "the interpretation of this rule by federal courts is highly persuasive." *Shaw v. North American Title Co.*, 76 Hawai'i 323, 326, 876 P.2d 1291, 1294 (1994) (citations omitted). However, as the supreme judicial tribunal for the State of Hawai'i, we have the authority to adopt an interpretation of the HRCP that differs from the federal courts' interpretation of the FRCP. Where sound policy reasons exist for adopting a differing interpretation, we will do so.

*Collins v. South Seas Jeep Eagle*, 87 Hawai'i 86, 88, 952 P.2d 374, 376 (1997) (footnote omitted).

Prior to trial, Defendants tendered an HRCP Rule 68 offer of judgment in the amount of $100,000.00, which Appellants did not accept. Inasmuch as the judgment obtained by Appellants was not more favorable than the offer, the circuit court, in accordance with HRCP Rule 68, ordered Appellants to pay Defendants costs in their entirety, or $5,310.98.

Appellants do not dispute that costs were authorized under HRCP Rule 68, but claim that several of the costs taxed by Defendants were not allowable under HRS § 607–9. Defendants, on the other hand, contend that, inasmuch as an award of costs under HRCP Rule 68 is mandatory, the circuit court was compelled to grant their entire request for costs.

■ Pursuant to HRCP Rule 68, "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree *must* pay the costs incurred after making of the offer." (Emphasis added.) In other words, "[i]f the offer [of judgment] is rejected, and the offeree ultimately obtains a judgment that is less favorable than the offer, the offeree must pay the offeror's post-offer

costs, and the offeree is precluded from obtaining his or her post-offer costs." *Collins*, 87 Hawai'i at 88, 952 P.2d at 376.

■ Nevertheless, "[t]he term 'costs' in Rule 68 is intended to refer to all costs *properly* awardable under the relevant substantive statute." *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 860 (9th Cir. 1996) (citing *Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985)) (emphasis added), *cert. denied*, 519 U.S. 1109, 117 S.Ct. 944, 136 L.Ed.2d 833 (1997). In Hawai'i, taxable "costs" are defined in HRS § 607–9 (1993), which provides in pertinent part:

> **§ 607–9 Cost charges exclusive; disbursements.** No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.
>
> <u>All actual disbursements</u>, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, <u>and deemed reasonable by the court,</u> may be allowed in taxation of costs....

(Underscoring added.) (Bold emphases in original.) Reading HRS § 607–9 and HRCP Rule 68 in pari materia, *see Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (noting that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference with each other"), *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994), it follows that the term "costs" in HRCP Rule 68 refers to all actual disbursements deemed reasonable by the court. Notwithstanding the broad language of HRS § 607–9, costs that are expressly prohibited by statute or precedent are not allowed.

■ "[T]he trial court has the discretion of determining what is reasonable." *Geldert v. State*, 3 Haw.App. 259, 268, 649 P.2d 1165, 1172 (1982); *see Nani Koolau Co. v. K & M Constr., Inc.*, 5 Haw.App. 137, 144, 681 P.2d

580, 586 (1984). Additionally, because there is a presumption that the offeror shall be awarded its costs, the burden of showing that a particular cost request is unreasonable is more properly on the adverse party. *See Wong v. Takeuchi,* 87 Hawai'i 320, 327, 955 P.2d 593, 600 (1998). Thus, "[u]nless there is a specific objection to an expense item, the court ordinarily should approve the item. The burden of proving correctness of items shifts to the party claiming them only after objections have been filed to specific items." *Id.* (citing *Lewis, Wilson, Lewis & Jones v. First Nat'l,* 435 So.2d 20, 23 (Ala.1983)). "The [adverse] party bears the burden of showing that a denial of costs is justified because 'the denial of costs is by nature a penalty.' " *Id.* (citing *National Information Services, Inc. v. TRW, Inc.,* 51 F.3d 1470, 1472 (9th Cir.1995)).

Appellants argue that the circuit court improperly taxed three of Defendants' requested costs against Canalez:

It was clear error to tax Mr. Canalez for Dr. Sue's expert fee [of $2,382.38] when he was not subpoenaed for trial. *Scott v. Kona Dev. Co.,* 21 Haw. 408 (1913). AP-PELLEES took Dr. Sue's deposition in the evening during trial for perpetuation purposes, yet failed to introduce one iota of his testimony at trial.

Likewise, the defense apparently flew one of the two investigating officers from the Mainland to testify, yet failed to have him testify at trial. The [$467.00 in] travel expenses were therefore neither necessary nor reasonable and should not be allowed. *Turner v. Willis,* 59 Haw. 319, 329, 582 P.2d 710, 716 (1978).

The defense also received [$210.18] reimbursement for the videotape proceedings of 11/18/94 [sic], which was apparently to be utilized in the aborted motion to disqualify plaintiff[']s counsel. The rule should be analogous to those involving depositions: such costs are only recoverable if the depositions were necessarily obtained for use at trial. *Tradewinds Hotel, Inc. v. Cochran,* 8 Haw.App. 256, 799 P.2d 60, *reconsideration denied,* 8 Haw.App. 662, 868 P.2d 466 (1990).

We reject Appellants' contentions and hold that the circuit court correctly awarded the foregoing costs. Turning to the $2,382.28 incurred for Dr. Sue's services, Appellants rely upon *Scott* for the proposition that Dr. Sue's fee was not taxable as costs. In *Scott,* which was decided more than eighty years ago, the court addressed, in dictum, the propriety of assessing expert witness fees against the losing party under Revised Laws of Hawai'i (RLH) § 1889 (1905), a predecessor statute to HRS § 607–9. Similar to HRS § 607–9, RLH § 1889 provided in pertinent part that "all actual disbursements sworn to by an attorney and deemed reasonable by the taxing officer, may be allowed in taxation of costs." Holding that the expert witness fees at issue in *Scott* should not be allowed under RLH § 1889, the *Scott* court reasoned simply that:

[RLH § 1889] is meager and leaves much to the discretion of the court. It is difficult to define, by construction, all the disbursements intended by the legislature to be taxable. It will suffice to say that in our opinion the items under consideration are not taxable. It is plain that[,] if they were allowed, "the precedent would draw after it the expense of every preparation for trial and open the door to a flood of evil."

*Id.* at 423–24 (citations omitted).

In view of *Scott,* this court has reaffirmed the proposition that expert witness fees are normally not allowed. *See Mist v. Westin Hotels, Inc.,* 69 Haw. 192, 202, 738 P.2d 85, 92 (1987) (citing *Lucas v. Liggett & Myers Tobacco Co.,* 51 Haw. 346, 347, 461 P.2d 140, 142 (1969) (per curium)); *Lucas,* 51 Haw. at 347, 461 P.2d at 142 (citing *Scott,* 21 Haw. at 423). However, unlike *Scott* and its progeny, the instant case involves an award of costs in the HRCP Rule 68 context; as such, this court is faced with an entirely new set of policy considerations, none of which the *Scott, Lucas,* or *Mist* courts had the opportunity to evaluate. It is therefore incumbent upon this court, giving due consideration to the particular policies behind Rule 68, to decide whether the rule espoused in *Scott* should apply to the HRCP Rule 68 context.

As stated by the United States Court of Appeals for the Sixth Circuit in *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291 (6th Cir.1989):

> Rule 68 was enacted "to encourage settlements and avoid protracted litigation by taxing a claimant with costs if he [or she] should recover no more after trial than he would have received if he had accepted the defending party's offer." Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure*, 98 F.R.D. 337, 363 (1983).... Through the use of a Rule 68 offer of judgment, the defendant can require the plaintiff to evaluate the merits of the case before the plaintiff may force defendant to incur the substantial expense of trial. As the Supreme Court has stated, Rule 68
>
>> prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits.... To be sure, application of Rule 68 will require plaintiffs to "think very hard" about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates.
>
> *Marek v. Chesny*, 473 U.S. 1, 5, 11, 105 S.Ct. 3012, 3014, 3017, 87 L.Ed.2d 1 (1985).

*Hopper*, 867 F.2d at 294.

■ In light of the compelling policies driving Rule 68—namely, to "encourage[ ] settlements and discourage[ ] vexatious suits and thus diminish[ ] the burden of litigation," *Langaman v. Mike Salta Pontiac, Inc.*, 4 Haw.App. 57, 67 n. 9, 659 P.2d 752, 758 n. 9 (1983) (quoting 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3001 (1st ed.1973))—and considering that *Scott* and its progeny did not have the opportunity to take such policies into consideration, we hold that *Scott*, *Lucas*, and *Mist* are inapposite to the case at bar. "The purpose of Rule 68 is to significantly increase the incentives for settlement by attaching financial penalties (through a cost-shifting mechanism) to the rejection of a settlement offer that was eventually proved (by the verdict) to have been reasonable[.]" Lesley S.

Bonney et al., *Rule 68: Awakening a Sleeping Giant*, 65 Geo. Wash. L.Rev. 379, 380 (1997) (footnote omitted). Accordingly, where an offeree fails to accurately evaluate the merits of his or her case, forcing the offeror to incur the substantial expense of trial, the consequences under Rule 68 are intentionally and deservedly harsh—to wit, the offeree must pay the "costs incurred after making the offer." Insofar as inclusion of reasonable expert witness fees as costs under HRCP Rule 68 would clearly serve to better promote the purpose and policies underlying the rule, we expressly hold that expert witness fees incurred after the making of an offer of judgment, if deemed reasonable, are taxable in the court's discretion as costs against the offeree pursuant to HRCP Rule 68.

■ Still, Appellants essentially argue that Dr. Sue's expert fee is unreasonable because Defendants did not introduce any of Dr. Sue's deposition testimony at trial. This argument lacks merit. Defendants point out that they "deposed Dr. Sue to perpetuate his testimony in anticipation that Appellant[s] would sustain [their] burden of proof and that Dr. Sue's testimony would be needed to rebut Appellant[s'] case in chief." Stating that they "were prepared to play the videotape of Dr. Sue's deposition," Defendants explain that they "chose to forego the playing of the videotape after concluding that Appellant[s] had not sustained [their] burden of proof and that Dr. Sue's testimony was unnecessary." In light of Defendants' explanation, and considering that Appellants offer no other argument to demonstrate that Dr. Sue's expert fee was taxed against Canalez in error, we hold that Dr. Sue's expert fee of $2,382.38 was reasonable and, therefore, within the discretion of the circuit court to tax against Canalez.

■ We reach the same conclusion with respect to the $437.00 incurred as travel expenses for one of the investigating police officers (whom Defendants subpoenaed to appear at trial) as well as the $210.98 for the videotape transcript of the proceedings on November 16, 1994. Although this court advised in *Turner* that trial courts should "exercise restraint in taxing as costs the travel

expenses of out-of-state witnesses," 59 Haw. at 329, 582 P.2d at 716, Rule 68 requires that, if deemed reasonable, the circuit court may, in its discretion, tax such expenses against the adverse party. Defendants state that they arranged for the investigating police officer to fly from the mainland "in anticipation that the officer's testimony would be needed to rebut Appellant[s'] case in chief." According to Defendants, they "decided to forego that officer's testimony after the testimony of another officer established the points that [Defendants] intended to make." Based on the foregoing, we hold that the travel expenses of the out-of-state investigator were reasonably incurred. As such, the trial court properly taxed the $437.00 in travel expenses against Canalez.

 Similarly, although Defendants did not utilize the videotape transcript of the November 16, 1994 proceedings in their case at trial, such an expense is not prohibited by statute or precedent and the circuit court possessed the discretion to tax it, if reasonable, against Canalez. As previously indicated, Defendants moved to disqualify Grab upon learning from Grab during the second settlement conference that Grab might possess confidential information regarding Hinokuma's assets. Insofar as the circuit court determined that the expense of the videotape transcript of the November 16, 1994 was reasonably incurred in connection with Defendants' motion, and Appellants have failed to submit any evidence to demonstrate that said cost is unreasonable, we hold that the $210.98 for the videotape transcript was also properly taxed against Canalez.

## IV. *CONCLUSION*

For the foregoing reasons, we affirm the circuit court's (1) April 16, 1998 order granting in part Defendants' motion for attorney's fees and sanctions, and (2) April 16, 1998 order granting Defendants' motion for costs.